450 So.2d 305 (1984)
Jose Guadalupe VELA, Appellant,
v.
STATE of Florida, Appellee.
No. 83-331.
District Court of Appeal of Florida, Fifth District.
May 17, 1984.
James B. Gibson, Public Defender, and David A. Henson, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellee.
*306 FRANK D. UPCHURCH, Jr., Judge.
Jose Guadalupe Vela was convicted of DWI/Manslaughter and vehicular homicide arising from an automobile accident. He appeals contending the trial court erred in denying his motion for discharge based on pre-arrest delay and denial of speedy trial. He also maintains that the court erred in adjudicating and sentencing him for DWI/Manslaughter and vehicular homicide where there was only one collision and one death.
The facts, stated briefly, are as follows. By information filed on August 7, 1977, Vela was charged with the above two crimes arising out of an automobile accident which occurred on May 15, 1977. Vela, who is a fruit picker and travels to different states to work, was not arrested on the charges until April 1, 1982, and trial began in late January, 1983.
At trial, two eyewitnesses to the accident testified for the state. They each testified that they saw the car being driven by Vela fly across Highway 50 in Orange County and plow into the side of an automobile being driven by the decedent, who was apparently killed instantly. Neither of the eyewitnesses saw anyone else in Vela's car and a search of the accident scene failed to reveal the presence of any other passengers. Extensive testimony was presented regarding Vela's intoxication at the time of the accident. Vela denied being intoxicated and claimed he had been struck on the back of the head by an intruder while driving and that this rendered him senseless to the collision.
Vela argues that in light of the over five-year delay between the time the information was filed against him and the time trial began, his motion for discharge should have been granted. The record reveals that Vela, as a fruit picker, works with his family part of the year in Florida and part in midwestern states including Iowa, Illinois and Missouri. He lives in Florida from November to June and spends the remaining months in the midwest. He keeps a house trailer in Orange County and moved it once in 1979.
Nine days after the information was filed against Vela, Detective Humphrey of the Orange County Sheriff's Department visited Vela's address in Orange County, but Vela was not at his trailer. Humphrey spoke with the trailer park manager who told him that Vela had left the state. The manager had a postal change of address card which indicated Vela's new address in Illinois. The manager informed Humphrey that Vela would be back during fruit season, in May. Humphrey left his card with the manager and asked her to call him if and when Vela returned. She never called. He also left a card with a migrant workers official for whom Vela had worked. After this visit, Humphrey sent a teletype and capias to Illinois police, and subsequently learned that Illinois officials could not locate Vela.
Humphrey returned to the trailer park in November, 1977, but again could not locate Vela. He spoke to some maintenance people who had no idea who Vela was. Following this visit, Humphrey indicated this was a "could not locate" situation and did nothing until March 29, 1982, when he received an anonymous call that Vela had been seen in a residential area of Orange County. Humphrey investigated and on April 1, 1982, was able to locate Vela's trailer and arrest him.
The constitutional guarantee of a speedy trial, embodied in the Sixth Amendment, becomes applicable upon either arrest or indictment, whichever occurs first. United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth four elements that are to be balanced against each other on a case-by-case basis to determine whether a defendant's right to constitutional speedy trial has been violated. These elements are: (1) length of delay; (2) reason for delay, (3) whether the defendant asserted his right to be tried speedily, and (4) prejudice to the defendant caused by the delay. See also State v. *307 Bonamy, 409 So.2d 518 (Fla. 5th DCA 1982). In Barker, the Court stated that it regarded "none of the four factors ... as either a necessary or sufficient condition to the finding of a deprivation of the speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." 92 S.Ct. at 2193.
As to the first element, length of delay, it is merely a threshold triggering mechanism. Bonamy, 409 So.2d at 519. A court need not inquire into the other factors unless there has been a delay of such length as to be "presumptively prejudicial." Id. In Bonamy, this court indicated that a delay of one year between arraignment and trial is long enough to trigger this threshold presumption, but we also emphasized that the length of delay is not sufficient in itself to warrant a finding that the defendant was deprived of constitutional speedy trial. Id. See also United States v. Edwards, 577 F.2d 883 (5th Cir.1978). To emphasize this latter point, we noted that:
In Barker, the United States Supreme Court found that there had been no denial of speedy trial even though the delay had been `well over five years.' In numerous other cases, delays ranging from one-and-a-half years to six years have been found not in violation of a defendant's constitutional speedy trial when viewed in light of the other elements. E.g. United States v. Hill, 622 F.2d 900 (5th Cir. 1980); United States v. Saglimbene, 471 F.2d 16 (2d Cir.1972), cert. denied, 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973).
Bonamy, 409 So.2d at 519-20. Here, the delay of over five years between the filing of the information and commencement of trial is of sufficient length to require consideration of the other factors.
The Fifth Circuit has recognized three different categories of delay, deliberate delay, negligent delay, and justified delay. United States v. Avalos, 541 F.2d 1100 (5th Cir.1976). See also Howell v. State, 418 So.2d 1164 (Fla. 1st DCA 1982). A deliberate delay is to be weighted heavily against the government while a negligent delay should be weighted less heavily but nevertheless should be considered since ultimate responsibility for such circumstances rests with the government. Barker, 92 S.Ct. at 2192.
There is no claim that the delay between filing of the information and Vela's arrest was deliberate. Rather, Vela is, in essence, alleging negligent delay, that he could and should have been arrested much sooner than he actually was. In United States v. Jenkins, 701 F.2d 850 (10th Cir.1983), the Tenth Circuit found that the authorities' attempts to locate the accused (which included contacting the post office for a forwarding address, checking for utility services and other standard inquiries) were insufficient and that the government was negligent in failing to locate the defendant for some sixteen months. The court noted there was no evidence establishing that the defendant left his residence to avoid arrest or conceal his whereabouts.
This case is similar. Not only is there no evidence of flight or concealment, but the manager of Vela's trailer park advised the police that Vela would be returning to his trailer in May, 1978. No attempt was made to check back at that time. From this we conclude that the police were negligent in not locating and arresting Vela until April of 1982.
As noted in Jenkins, however, this factor again is not dispositive and the crucial issue concerns the presence or absence of prejudice to the defendant from the delay.
While a showing of prejudice is not necessary to a finding of a Sixth Amendment violation, there is some reluctance to find a speedy trial deprivation where there is no prejudice. Jenkins, 701 F.2d at 857. See also United States v. Brown, 600 F.2d 248, 254 (10th Cir.); cert. denied, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979). For instance, in Jenkins, the court, while finding that the government was negligent in not arresting the defendant for some sixteen months after the indictment against *308 him was issued, nevertheless concluded that "after weighing all of the Barker factors, and considering especially the lack of a showing of prejudice by the delay, we conclude that the defendant's Sixth Amendment right to a speedy trial has not been violated." 701 F.2d at 857-58.
Under Barker, prejudice to the defendant is assessed in light of three interests the speedy trial guarantee is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. Barker, 92 S.Ct. at 2193. Here, there was virtually no pre-trial incarceration as Vela was free for the entire period from the filing of the information until he was arrested on April 1, 1982. Likewise, Vela apparently was unaware of the pending charges during this period and hence can claim no anxiety and concern. Finally, Vela has not shown actual prejudice by impairment of his defense due to the delay. Vela claims that because of the delay, the identities of participating deputy sheriffs were lost, thus preventing him from establishing any independent support for his claim that he had been struck on the head from behind by someone hiding in his car. However, considering the testimony of the only eyewitnesses to the accident who said they searched around the vehicle and a nearby orange grove and did not find anyone else, this claim is without merit.
In summary, after considering all of the Barker factors and especially the lack of a showing of prejudice by the delay,[1] Vela's constitutional right to a speedy trial was not violated and hence the trial court did not err in denying his motion for discharge.
We do agree with Vela, however, that he could only be convicted and sentenced for DWI/Manslaughter or vehicular homicide, and not both.[2]See Goss v. State, 398 So.2d 998 (Fla. 5th DCA 1982); Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981); Ubelis v. State, 384 So.2d 1294 (Fla. 2d DCA 1980). We reverse the conviction and sentence on vehicular homicide.
AFFIRMED in part, REVERSED in part.
COBB and SHARP, JJ., concur.
NOTES
[1] We recognize there is authority for the view that when the first three Barker factors are heavily weighted in favor of the accused, the necessity for a demonstration of actual prejudice is not required. Howell v. State, 418 So.2d at 1174; United States v. Edwards, 577 F.2d at 889, n. 8. However, we are not confronted with such a situation here because factors two and three are not weighted heavily in Vela's favor.
[2] Vela was charged and convicted of both DWI/Manslaughter in violation of section 860.01, Florida Statutes (1977) and vehicular homicide, in violation of section 782.071, Florida Statutes (1977). DWI/Manslaughter requires proof of the following elements:

(1) that the victim is dead;
(2) that the death was caused by the operation of a motor vehicle by the defendant; and
(3) that the defendant was intoxicated at the time he operated the motor vehicle.
Baker v. State, 377 So.2d 17 (Fla. 1979).
Vehicular homicide requires proof of the following elements:
(1) that the victim is dead;
(2) that the death was caused by the operation of a motor vehicle by the defendant; and
(3) that the defendant operated the motor vehicle in a reckless manner likely to cause the death of, or great bodily harm to another person.
Grala v. State, 414 So.2d 621 (Fla. 3d DCA 1982).
The state argues that under a double jeopardy analysis, since each offense requires proof of an element which the other does not (DWI/Manslaughter requires proof of intoxication while vehicular homicide requires proof of recklessness) the offenses are separate and distinct and Vela could be convicted and sentenced for each. However, we are dealing here with a degree crime, homicide, and it is "logically impossible to commit more than one degree crime as to one death." Baker v. State, 425 So.2d 36, 60 (Fla. 5th DCA 1982) (Cowart, J., dissenting).