456 So.2d 1265 (1984)
Thomas Wayne HOUSER, Appellant,
v.
STATE of Florida, Appellee.
No. AT-128.
District Court of Appeal of Florida, First District.
September 26, 1984.
*1266 Terry P. Lewis, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Richard A. Patterson, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
Appellant seeks review of judgments of conviction and sentences for the offenses of DWI manslaughter and vehicular homicide. We find that appellant has failed to present any point of reversible error, and we therefore affirm the judgments and sentences appealed.
Appellant was the driver of a motor vehicle which struck a concrete wall, killing a passenger in the vehicle. Chemical analysis of appellant's blood indicated a blood alcohol level of 0.18%, and appellant was charged with both DWI manslaughter and vehicular homicide.
Prior to trial appellant sought to compel production of the blood sample for defense analysis, and the discovery was then made that the blood had not been continuously refrigerated after the initial analysis. Expert testimony established that a prolonged lack of refrigeration could diminish the blood alcohol content and thus impact the validity of any subsequent analysis. Appellant moved to suppress evidence relating to his blood alcohol content, asserting that the introduction of such evidence would violate his rights of confrontation and due process. The trial court denied the motion to suppress, and permitted evidence as to appellant's blood alcohol content.
The state's failure to preserve a blood sample for defense analysis does not of itself necessitate suppression of the state's evidence;[1] rather, the egregiousness of the state conduct and the resulting prejudice to appellant must be considered. Demps v. State, 395 So.2d 501 (Fla. 1981); State v. Sobel, 363 So.2d 324 (Fla. 1978); Salvatore v. State, 366 So.2d 745 (Fla. 1978). And the exculpatory value of the evidence must be viewed in the context of the entire record. See California v. Trombetta, ___ U.S. ___, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
With regard to substances identifiable only by chemical analysis, it is the analysis itself, rather than the physical substance, which is of primary importance to a defendant. See G.E.G. v. State, 389 So.2d 325 (Fla. 5th DCA 1980); cf., Trombetta, supra. In the present case the state's blood analysis expert was available for cross-examination, and appellant presented no evidence which would undermine the accuracy of the expert's methods and procedures or otherwise make independent analysis indispensable to a fair defense. We therefore find, in the context of the entire record, that the state's failure to preserve a blood sample susceptible of defense analysis did not result in such prejudice *1267 as would warrant suppression of evidence derived from the chemical analysis of appellant's blood.
Appellant also contends that he should not have been sentenced for both DWI manslaughter and vehicular homicide because only a single death occurred. However, DWI manslaughter, § 316.1931(2), Florida Statutes, and vehicular homicide, § 782.071, Florida Statutes, are separate and distinct offenses, each requiring proof of an element which the other does not;[2] the imposition of sentences for both offenses therefore does not violate protections against double jeopardy. See e.g., Scott v. State, 453 So.2d 798 (Fla. 1984); State v. Baker, 452 So.2d 927 (Fla. 1984); Borges v. State, 415 So.2d 1265 (Fla. 1982). The legislature has authorized multiple punishments for separate offenses occurring in one criminal episode, see § 775.021(4), Florida Statutes, and we find no error in the imposition of multiple sentences in the present case. Contra, Vela v. State, 450 So.2d 305 (Fla. 5th DCA 1984).
Appellant further contends that the state should have been precluded from introducing any evidence derived from chemical analysis for blood alcohol content since the Department of Health and Rehabilitative Services did not promulgate rules and regulations governing the administration of such chemical analysis until after appellant's blood was examined. This issue was addressed in Drury v. Harding, 443 So.2d 360 (Fla. 1st DCA 1983), pending on certified question, Supreme Court Case No. 64,724, holding that such rules are procedural and may be applied to chemical tests administered prior to their adoption. Accord, State v. Fardelman, 453 So.2d 1183 (Fla. 5th DCA 1984).
We hereby certify that the decision in the present case is in direct conflict with Vela v. State, supra, and pursuant to Fla.R.App. P. 9.125, we further certify the following questions as issues which are of great public importance and which have great effect on the proper administration of justice throughout the state:
WHETHER EVIDENCE DERIVED FROM CHEMICAL ANALYSIS FOR BLOOD ALCOHOL CONTENT MAY BE ADMISSIBLE IF THE STATE DOES NOT PRESERVE A BLOOD SAMPLE SUSCEPTIBLE OF FURTHER ANALYSIS BY THE DEFENSE;
WHETHER A DEFENDANT MAY BE SENTENCED FOR BOTH DWI MANSLAUGHTER AND VEHICULAR HOMICIDE FOR EFFECTING A SINGLE DEATH;
WHETHER EVIDENCE OF BLOOD ALCOHOL CONTENT ESTABLISHED BY CHEMICAL ANALYSIS PRIOR TO THE ADOPTION OF HRS RULES RELATING THERETO MAY BE ALLOWED INTO EVIDENCE AT A TRIAL SUBSEQUENT TO THE ADOPTION OF SUCH RULES.
The judgments and sentences appealed are affirmed.
ERVIN, C.J., and BOOTH, J., concur.
NOTES
[1] See generally, State v. Plawchan, 453 So.2d 496 (Fla. 1st DCA 1984), applying California v. Trombetta, ___ U.S. ___, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), with regard to the state's failure to obtain a preservable breath sample for defense analysis.
[2] But see Vela v. State, 450 So.2d 305 (Fla. 5th DCA 1984); compare Johnson v. State, 419 So.2d 1144 (Fla. 2d DCA 1982); Miller v. State, 339 So.2d 1129 (Fla. 2d DCA 1976); Stewart v. State, 184 So.2d 489 (Fla. 4th DCA 1966). While Vela suggests that § 316.1931(2) and § 782.071 merely provide differing methods of proving the single offense of homicide, upon examining the statutes we must disagree. Section 782.071 is a homicide statute which circumscribes the fatal operation of a motor vehicle "in a reckless manner likely to cause ... death ... or great bodily harm... ." Section 316.1931, however, merely establishes the applicable penalties for driving while intoxicated, and provides that:

(2) ... if the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslaughter and on conviction shall be punished as provided by existing law relating to manslaughter.
This language, which immediately follows an enhancement of the penalty when less severe damage results, does not alter the primary focus of the statute  driving while intoxicated.