474 So.2d 1193 (1985)
Thomas Wayne HOUSER, Petitioner,
v.
STATE of Florida, Respondent.
No. 66074.
Supreme Court of Florida.
August 22, 1985.
*1194 Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for petitioner.
Jim Smith, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for respondent.
EHRLICH, Justice.
The district court certified its opinion in this case to be in direct conflict with Vela v. State, 450 So.2d 305 (Fla. 5th DCA 1984). It also certified three questions to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
A passenger in a car Houser was driving died when the car struck a concrete wall. Police took a blood sample which showed Houser's blood alcohol level to be 0.18%. He was charged with DWI manslaughter, section 316.1931(2), Fla. Stat. (1983), and vehicular homicide, section 782.071. Four months after the accident, shortly before trial, Houser's attorney sought the blood sample police had taken at the time of the accident for independent testing. The sample had not been refrigerated and thus had lost any value for testing purposes. Houser unsuccessfully sought to suppress the results of the police analysis. He was convicted and sentenced on both charges.
The First District Court of Appeal affirmed. It held that the results of the police blood test were admissible despite the inability of the state to produce a useable sample to the defendant. It also held that the convictions and sentences of the two crimes did not subject Houser to double jeopardy. This holding was certified to be in conflict with Vela, which held that the trial court could render only one conviction and sentence for the two crimes. The three certified questions are:
WHETHER EVIDENCE DERIVED FROM CHEMICAL ANALYSIS FOR BLOOD ALCOHOL CONTENT MAY BE ADMISSIBLE IF THE STATE DOES NOT PRESERVE A BLOOD SAMPLE *1195 SUSCEPTIBLE OF FURTHER ANALYSIS BY THE DEFENSE;
WHETHER A DEFENDANT MAY BE SENTENCED FOR BOTH DWI MANSLAUGHTER AND VEHICULAR HOMICIDE FOR EFFECTING A SINGLE DEATH;
WHETHER EVIDENCE OF BLOOD ALCOHOL CONTENT ESTABLISHED BY CHEMICAL ANALYSIS PRIOR TO THE ADOPTION OF HRS RULES RELATING THERETO MAY BE ALLOWED INTO EVIDENCE AT A TRIAL SUBSEQUENT TO THE ADOPTION OF SUCH RULES.
Houser v. State, 456 So.2d 1265, 1267 (Fla. 1st DCA 1984).
We answer the first and third questions in the affirmative, and the second question in the negative.

PRESERVATION OF BLOOD SAMPLES
Houser argues that he was denied due process because of the inability to independently test the blood sample taken at police direction at the time of the accident, and that the results of the police analysis should have been suppressed. The United States Supreme Court has already held that there is no federal constitutional requirement to preserve breath samples taken to determine blood alcohol levels. California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Routine, good faith destruction of the remnants of the sampling showed no conscious effort to suppress exculpatory evidence. More importantly, the Court held, due process requires preservation of evidence only if it is likely to be significant in the suspect's defense. Given the general reliability of properly administered tests, a preserved breath sample is much more likely to prove inculpatory than exculpatory. The breath testing machines and calibrating records and samples were available to impeach the machine's reliability, and the defendant had the right to cross-examine the machine operator to expose potential errors in the administration of the test.
We see no difference between the Trombetta rationale for breath samples and the situation regarding blood samples. The Trombetta Court obviously saw its decision as having broad implications when it said "We have ... never squarely addressed the Government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants." 104 S.Ct. at 2533.
A blood or breath sample has no inherent evidential value. The evidence at trial is not the sample but, rather, the results of tests performed on the sample. Trombetta; State v. Cooper, 391 So.2d 332 (Fla. 3d DCA 1980). The due process question thus is whether the accused has sufficient opportunity to question the results of the tests. There is no indication in this case that the state failed to refrigerate the sample in bad faith. The defendant was free to seek discovery as to the devices used in the testing, section 316.19321(f)4., Fla. Stat. (1983), and to cross-examine the technician who actually performed the test. He was also free to introduce evidence as to the general reliability of blood alcohol testing to further attack the reliability of the results. Finally, section 316.19321(f)3. provides for the defendant to have an independent blood, urine or breath test performed at his own expense.[1]
Independent testing is only one tool among several and it does not encompass a prosecutorial duty to produce the state's sample for testing. An accused's due process right to attack the credibility of the results of the tests is preserved, and the extreme sanction of suppression is unnecessary.
We therefore hold that the state is not obligated to take affirmative steps to preserve a blood sample, drawn pursuant *1196 to section 316.1932, on the behalf of criminal defendants. See State v. Ehlen, 119 Wis.2d 451, 351 N.W.2d 503 (1984). We answer the first certified question in the affirmative.

DOUBLE JEOPARDY
We agree with the Fifth District in Vela that only one homicide conviction and sentence may be imposed for a single death. The First District in the instant case determined that sections 316.1931(2)[2] (DWI manslaughter) and 782.071[3] (vehicular homicide) were separate crimes, "each requiring proof of an element which the other does not." 456 So.2d at 1267. The court reasoned that DWI manslaughter was framed as an enhancement of the penalty for driving while intoxicated, and driving while intoxicated is a crime distinct from vehicular homicide. We do not agree.
First, DWI manslaughter is not merely an enhancement of penalty for driving while intoxicated.
Under the common law involuntary manslaughter was defined as the unintentional killing of another by a person engaged at the time in doing an unlawful act not amounting to a felony and not likely to endanger life, or doing a lawful act in an unlawful manner. .. . In this State  as in many others  the Legislature has defined involuntary manslaughter. Our statutes define it as (1) the killing of a human being by the act, procurement or culpable negligence of another in cases where such killing shall not be justifiable or excusable homicide or murder, section 782.07, F.S.A.; or (2) the death of a human being caused by the operation of a motor vehicle by any person while intoxicated. Section 860.01, F.S.A. [now section 316.1931].
Smith v. State, 65 So.2d 303, 304-05 (Fla. 1953). Double jeopardy considerations may bar prosecution for DWI manslaughter following acquittal for driving while intoxicated, see, e.g., Humphries v. Wainwright, 584 F.2d 702 (5th Cir.1978), but the additional element of the death of a victim raises DWI manslaughter beyond mere enhancement and places it squarely within the scope of this state's regulation of homicide.
Second, while the First District is correct in its Blockburger[4] analysis that the two crimes are separate, see, e.g., State v. Baker, 452 So.2d 927 (Fla. 1984), Blockburger and its statutory equivalent in section 775.024(1), Fla. Stat. (1983), are only tools of statutory interpretation which cannot contravene the contrary intent of the legislature. Garrett v. United States, ___ U.S. ___, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Rotenberry v. State, 468 So.2d 971 (Fla. 1985); State v. Gibson, 452 So.2d 553 (Fla. 1984). And "[t]he assumption underlying the Blockburger rule is that [the legislative body] ordinarily does not intend to punish the same offense under two different statutes." Ball v. United States, ___ U.S. ___, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985). This assumption should apply generally to statutory construction. While the legislature is free to punish the same crime under two or more statutes, it cannot be assumed that it ordinarily intends to do so.
*1197 Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes. Vela; Goss v. State, 398 So.2d 998 (Fla. 5th DCA 1981) (premeditated and felony murder); Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981) (first-degree felony murder and second-degree murder). The principle has been applied in the case of dual charges of DWI manslaughter and manslaughter. Thomas v. State, 380 So.2d 1299 (Fla. 4th DCA), review denied, 389 So.2d 1116 (Fla. 1980); Miller v. State, 339 So.2d 1129 (Fla. 2d DCA 1976); Carr v. State, 338 So.2d 267 (Fla. 1st DCA 1976); Stricklen v. State, 332 So.2d 119 (Fla. 1st DCA 1976); Phillips v. State, 289 So.2d 769 (Fla. 2d DCA 1974). And the rule has been utilized in the express situation now before us. Ubelis v. State, 384 So.2d 1294 (Fla. 2d DCA 1980); Brown v. State, 371 So.2d 161 (Fla. 2d DCA 1979), affirmed, 386 So.2d 549 (Fla. 1980).[5]
We therefore answer the second certified question in the negative: an offender may not be punished for both DWI manslaughter and vehicular homicide.

THIRD QUESTION AND CONCLUSION
The third certified question is controlled by our recent decision in Drury v. Harding, 461 So.2d 104 (Fla. 1984), wherein we held the results of blood tests made under these circumstances are admissible. We therefore answer the third question in the affirmative.
For the reasons outlined above, we quash the decision of the district court to the extent it conflicts with this decision and remand for appropriate action.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree with the majority opinion on the first and the third questions. The state is not obligated to take affirmative steps to preserve a blood sample, drawn pursuant to section 316.1932, on behalf of criminal defendants. Evidence of blood alcohol content established by chemical analysis prior to the adoption of HRS rules relating thereto may be allowed into evidence at a trial subsequent to the adoption of such rules.
I do not agree, however, that a defendant may not be sentenced for both DWI manslaughter and vehicular homicide for effecting a single death. These are separate and distinct offenses, each requiring proof of an element which the other does not. That being the case, the imposition of sentences for both offenses would not violate protections against double jeopardy. The intent of the legislature is clear.
(4) Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
Section 775.021(4), Florida Statutes (1983).
I would approve the decision of the district court and hold a defendant may be sentenced for both DWI manslaughter and *1198 vehicular homicide for effecting a single death.
NOTES
[1] We do not construe this section to require preservation of the sample taken at police request for analysis by defendant's expert. Section 316.1932 speaks of a "blood test" in a unitary manner, i.e. the drawing of the sample of blood and the analysis done thereon constitute the "test." The accused therefore has the right to have a sample taken and analysis made by an independent expert.
[2] Section 316.1931(1) outlines the basic crimes of driving while intoxicated (DWI) or under the influence of intoxicants (DUI). Subsection (2) first outlines the crime of DWI causing damage to property or person, then defines DWI manslaughter. "[I]f the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslaughter and on conviction shall be punished as provided by existing law relating to manslaughter." Manslaughter, section 782.07, is a felony of the second degree.
[3] "`Vehicular homicide' is the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. Vehicular homicide is a felony of the third degree... ."
[4] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[5] Relevant to this discussion is the Brown court's analysis of the relationship between the statutes under discussion here: "Causing the death of a person by the operation of a motor vehicle while intoxicated is a specific category of manslaughter. § 860.01(2), Fla. Stat. (1977) [subsequently recodified at § 316.1931(2)]. Vehicular homicide otherwise than from intoxication has been removed by the legislature from the manslaughter statute and made an offense subject to a lesser penalty than that imposed for manslaughter. §§ 782.07 and 782.071, Fla. Stat. (1977)." 371 So.2d at 162, n. 1.