## STATE OF FLORIDA v WOODS, et al. (Consolidated Cases)

### Case No. 89-0014-CA-AP-RpH (County Court Case Nos. 05410/11-PS, etc.)

Seventh Judicial Circuit, Volusia County

November 9, 1989

### APPEARANCES OF COUNSEL

**John W. Tanner,** State Attorney and **Samuel G. Easterbrook,** Assistant State Attorney, for appellant.

**Flem K. Whited,** for appellees.

### OPINION OF THE COURT

JOHN W. WATSON, Circuit Judge.

This issue in this case is whether the County Court erred in granting Defendants/Appellees' Motion in Limine determining that the results

of chemical breath tests administered to the several defendants/appellees were inadmissible.

After the eight consolidated defendants/appellees (hereafter defendants) were arrested, they submitted to a breath test conducted by the Port Orange Police Department using an Intoxilyzer 5000 breath testing instrument. The defendants filed Motions in Limine seeking to suppress the results of the tests.

The sole witness to testify at the hearing on said motions was produced by the defense and was Dr. Howard Rarick, Scientific Director of the Florida Implied Consent Program of HRS.

In granting the defendants' Motions in limine, the County Court in effect found that given the failures of the current HRS rules to require detailed local law enforcement agency record keeping of machine modifications, malfunctions and repairs, said current rules are constitutionally deficient and violative of defendants' due process rights in that they do not now assure that the chemical breath test instrument's results are reliable scientific evidence. Correspondingly, the County Court found that said above described failure of the current rules to require such records was such as to frustrate the defendants' ability to receive a fair trial by foreclosing an opportunity for the defense to effectively challenge a machine's reliability by cross examination and use of defense expert witnesses.

The County Court in rendering its ruling also certified to the Fifth District Court of Appeal, pursuant to Rules 9.030(b)(4) and 9.160, as an issue of great public importance, the following question:

In order to assure reliable scientific chemical test evidence must HRS implement regulations requiring detailed agency record keeping of machine modifications, malfunctions, and repairs?

The State of Florida has appealed the County Court's above rulings to the Fifth District Court of Appeal pursuant to 9.160 and 9.040(c)(1)(B), Florida Rules of Appellate Procedure. The District Court has by written order declined to accept jurisdiction of this appeal pursuant to 9.160(3), Florida Rules of Appellate Procedure, and has transferred this appeal to this Court for consideration of the issues.

In the proceedings below, the following was undisputed:

A. that the responsibility of approving and adopting rules setting forth uniform and reliable techniques, methods, and procedures for the analysis of a persons breath for the purpose of determining the alcoholic content of his blood has been lawfully delegated to HRS by the Legislature; and that upon a showing by he local agency

**39**

administering the test of substantial compliance with those HRS approved rules the breath analysis test results are considered valid and admissible into evidence; and that by demonstrating said substantial compliance with said rules not only are chemical breath test results admissible, but the accuracy of such results is presumed. See Section 316.1932(1)(a) and Section 316.1932(1)(b)(1), Florida Statutes (1987) and *State v Bender,* 382 So.2d 697 (Fla. 1980); and that the presumption of impairment is rebuttable by the defendant who may in any proceeding attack the reliability of the testing procedures by demonstrating noncompliance with the administrative rules enacted by HRS. See, *State v Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988).

B. that said Intoxilyzer Model 5000 is a chemical breath testing instrument approved by the State of Florida Department of Health and Rehabilitative Services (hereafter HRS), and further conceded that the specific instrument in question had been approved for use for HRS on August 3, 1984, and agreed that the subject instrument had been recertified by HRS on August 23, 1984, following substantial modification.

C. that all the current HRS rules relating to breath testing are lawfully adopted.

D. that the current HRS rules do not require the local law enforcement agencies to keep records of breath testing machine modifications, malfunctions or repairs.

A review of the record below reveals that the defendants did not introduce evidence of any non-compliance (substantial or otherwise) by the local agency with any of the current HRS rules nor did they introduce any evidence of the inaccuracy in their breath test results.

The calculated effect of the County Court's ruling is that not only are the breath test results in these instant cases inadmissible, but also no breath test results are admissible in evidence in any criminal prosecution brought before the court below until HRS amends its rules consistent with the lower court's order requiring amendments to the rules to cure the cited deficiency.

I.

The State initially asserts that none of the facts adduced at the hearing below were particularized as to these defendants and therefore the County Court erred in addressing the constitutionality issue as it applied to these defendants and accordingly erred in its ruling below. In that regard from a review of the record below it is unclear as to whether or not the Port Orange Police Department has or could

40

compile the desired detailed records such that they could be provided to the defense. (The Court notes that the record below includes testimony suggesting that the Port Orange Police Department and some other law enforcement agencies do keep more records than those required by current HRS rules including possibly records of modifications, malfunctions and repairs of their testing machines.)

There is well established authority for the position that without a showing of the unavailability (to these defendants) of the desired records, the issue of constitutional deficiency of the HRS rules should not have been addressed by the County Court since if the detailed records are available to the defendants the constitutional question as to these defendants becomes moot. See generally *State v Demarzo,* 453 So.2d 850 (4th DCA 1984) and *State of Florida v Inter-American Center Authority,* 84 So.2d 9 (Fla. 1955); and *Chamberlin v Dade County of Public Instruction,* 160 So.2d 97 (Fla. 1964). Accordingly, in applying the above principles, there would be a basis for this Court to now hold that the County Court erred in even considering the constitutional issue, and for this Court to now correspondingly decline to review the correctness of the County Court's rulings on constitutionality.[1] Under the circumstances herein, however, there are some compelling reasons for this Court to now review the correctness of said ruling on constitutionality. Those reasons are as follows:

(a) the principal contentions of the parties below and the ruling of the lower court were predicated on the constitutional issue. See *Fleeman v Case; Department of Business of Business Regulation v Johnson; Plaza Del Prado Condo Association, Inc. v Del Prado Corp.,* 342 So.2d 815 (Fla. 1977).

(b) it is foreseeable that upon further proceedings below it may be determined that the records in question are in fact not available to the defense thus making it necessary that this court to review the then ripe constitutional issue. See generally *State v Dye,* 346 So.2d 538 (Fla. 1977)

(c) since the current effect of the lower court's rulings is to prohibit introduction of any breath test results in any criminal prosecutions in that court until the HRS rules are amended to cure the cited deficiency, such review is now necessary in order to aid in the expeditious disposition of the issues. See *State v Dye,* supra.

---

[1] If such were the ruling of this Court, the matter would be remanded to the lower court to allow further hearing to determine if the records in question are in fact available. If they are available the defendants would have a right to full access to them under Chapter 316.1932(1)(f)4, Florida Statutes.

**41**

Because of those compelling reasons above cited, this Court deems it appropriate in the instant case to review the correctness of the County Court's rulings. In doing so this Court will assume in the discussions in II, III, IV and V below that the desired records are not available to the defense.

## II.

The State in its assertions that the County Court committed error in addressing the constitutionality issues contends that the County Court exceeds the proper scope of review in ruling on the constitutionality of a lawfully adopted HRS rule. With respect to this assertion, the State maintains that the procedure the County Court should have followed is to have required the defendants to properly pursue available administrative remedies to seek to have HRS amend the deficient rules pursuant to the Administrative Procedure Act, and then after exhausting said remedies, if necessary, appeal the administrative ruling to the appropriate District Court pursuant to Section 120.68, Florida Statutes (1987). In support of this contention the State cites as authority *Key Haven v Board of Trustees of Internal Improvement Trust Fund,* 427 So.2d 153 (Fla. 1982).

The defendants counter that the legislature's delegation to HRS of the ability to pass rules and regulations establishing reliable methods and procedures for breath testing does not and cannot abrogate and place with HRS the judicial function of determining admissibility of evidence, (i.e. determining if the methods and procedures as approved by HRS are reliable and meet due process and fundamental fairness standards such that the results of breath tests administered pursuant to them are admissible). Accordingly, the defendants maintain that the County Court did not exceed the proper scope of review in rendering its ruling.

As to the State's assertions above in reliance on *Key Haven,* supra, this Court finds that there is no adequate remedy for these defendants by way of the administrative process. As was previously state, for the purposes of addressing this current issue, this Court assumes the desired records are not available to the defendants since if they are available the constitutional issue is moot as to these defendants. Given that assumption, any remedy to these defendants that might result from the pursuing of the administrative process (or through appeal thereafter to the District Court), by the way of the desired amendment requiring the record keeping being added to the HRS rules and by way of all local agencies being thereafter required to keep and make available to defendants those records, would be an inadequate remedy as to these defendants. See *Key Haven,* supra, at page 157.

42

For the foregoing reasons, under the circumstances of this case this Court finds that the County Court was within the proper scope of review in addressing the constitutional issues.

## III.

The State also asserts that the County Court erred in that its ruling specifically directed HRS as to what rule amendments must be made in order to ensure reliable scientific evidence, and in order to comport with constitutional requirements. The state argues that in doing so the County Court has usurped the jurisdiction of HRS in derogation of the doctrine of the separation of powers.

There is authority for the view that it is improper for a court to give *mandatory directions* to a state agency purporting to designate and control that state agency in the performance of its administrative functions. (emphasis added) See *State ex rel Department of Health and Rehabilitative Services v Sepe,* 291 So.2d 108 (Fla. 3d DCA 1974).

A review of the County Court's ruling reveals that in addition to citing the constitutional deficiency, the court did in effect give mandatory directions to HRS as to what HRS must do to cure the cited deficiency. Therefore, in applying the principles of the *Sepe* case to the instant case, this Court finds that insofar as the County Court in its ruling gave mandatory directions to HRS as aforesaid the Court invaded the functions of a state agency as a division of the executive department in derogation of the doctrine of separation of powers of state government.

## IV.

As was previously stated the basis for the County Court's ruling on the constitutionality question was that given the failure of the current HRS rules to require detailed local law enforcement agency record keeping of machine modifications, malfunctions and repairs, said current rules are constitutionally deficient and violative of defendants' due process rights in that they do not now assure that the chemical breath test instrument's results are reliable scientific evidence. Correspondingly, the County Court found that said above described failure of the current rules to require such records was such as to frustrate the defendants' ability to receive a fair trial by foreclosing an opportunity for the defense to effectively challenge a machine's reliability by cross examination and use of defense expert witnesses.

The evidence at trial in the instant cases is the test results. The due process question thus is whether the defendants, given the current

43

statutes, HRS rules, and their discovery rights have a sufficient opportunity to question the results of the tests. See generally *Houser v State,* 474 So.2d 1193 (Fla. 1985).

A review of the current HRS rules together with the testimony from the (defendants') sole witness below relating to said rules, reveals that the current HRS rules as implemented provide for the following:

(1) That all chemical breath testing instruments used for breath testing by local agencies are to be previously checked and approved by HRS for proper calibration and performance, and are to be registered by trade name, model number, serial number and location on forms provided by HRS.

(2) That all such instruments are checked at least annually by HRS for accuracy and reproducibility. See F.A.C. 10D-42.023.

(3) That at least once per calendar month a visual inspection to insure general cleaniness, appearance, and accuracy, must be performed on the instrument by the local agency. See F.A.C. 10D-42.024(1)(a).

(4) That at least once per month a wetbath simulator inspection involving the conducting of three tests of a known standard solution is performed by the agency in an effort to insure that the instrument is and remains properly calibrated to give a correct result. See F.A.C. 10D-42.024(13)(b) and HRS Form 1514 Sept. '82, "Breath Alcohol Instrument Check List—Preventive Maintenance Procedures" which is incorporated in said Rule by reference.

(5) That there be maintained an agency log which documents each chemical test administered, preserves the name of each subject, the date and time of the test, the result (percent of blood alcohol), the arresting officer, the county where the suspected offense occurred, the ampule control number or test kit serial number, if applicable, the date of the last preventative maintenance, and the name of the person administering the test. This log must be kept two years from the last entry date. See F.A.C. 10D-42.024(14).

(6) That there be maintained a chemical test report on each person tested listing the same information as to (5) above. See F.A.C. 10D-42.024(15).

(7) That simulator testing involving twenty-five tests done at five different levels is conducted by HRS, or any agency or office it may appoint, at a minimum, of once a year with a target of once per quarter. See F.A.C. 10D-42.024(1)(e).

(8) That in order to obtain a permit to be a breath test instrument

44

technician certain education and instruction prerequisites relating to the operation of test instruments and preventive maintenance thereon must be met. See F.A.C. 10D-42.026.

Further, Chapter 316.1932(1)(f)3, Florida Statutes (1987), provides:

A person tested may, at his own expense, have a physician, registered nurse, duly licensed clinical laboratory technologist or clinical laboratory technician . . . administer a test . . . for the purpose of determining the amount of alcohol in his blood or the presence of chemical substances or controlled substances at the time alleged, as shown by chemical analysis of his blood, urine or breath. and Chapter 316.1932(1)(f)4, Florida Statutes (1987) provides:

Upon request of the person tested, full information concerning the test taken at the direction of the law enforcement officer shall be made available to him or to his attorney.

Given the above current provisions, the defendants are free to seek discovery (by deposition and/or production of any documentation required) as to the test instrument used in the testing, Section 316.1932(1)(f)4, and to cross examine the technicians who actually performed the test in order to attack their qualifications and in order to raise doubts in the mind of the factfinder whether the test was properly administered. The defendants are free to seek discovery of and cross examine witnesses as to all preventative maintenance procedures performed on the machine. The defendants were also free to introduce evidence as to the general reliability of breathalyzer testing, or as to the reliability of the breath testing procedures utilized. The defendants, at their own expense, could also have had at the time of their arrest an independent breath test pursuant to Chapter 316.1932(1)(f)3. This right would include a right to have an independent qualified expert take a separate breath sample and make an independent analysis on the breath sample. (See *Houser,* supra, at page 1195, footnote 1) Defendants can call expert witnesses on the ways a machine can malfunction, and the significance that repairs or malfunctions or modifications can have on the accuracy of the machine. The defense would have the option to pursue a showing through expert testimony that detailed records of repairs, modifications, and malfunctions, had they been available, could potentially reveal facts that would effect the reliability of the machine and the accuracy of the test results. If as argued by the defense, the availability of these records to the defense would measurably assist in challenging the reliability of the machine and the test results, then the failure of the agency to have kept such records or have such information available could in and of itself be asserted to the

**45**

trier of the fact as a factor decreasing or eliminating any weight to be given the test results.

The provisions of the HRS rules recited in (2), (3), (4) and (7) above are all testing and inspection procedures to determine if the breath test machine is giving accurate results. If any of the monthly testing procedures were to reveal that the machine is no operating accurately, then all tests performed before the malfunctioning was revealed, and after the most recent testing procedures confirming accurate machine functioning, are designated as test done on an instrument which was not in compliance with HRS rules and that information is passed on to the State Attorney.[2] If a test in question was done during that relevant time frame that fact would be available to the defense through depositions or other discovery methods and could be used by the defense to impeach the reliability of the test results.

As the above discussion reveals the current rules as implemented together with the Statutes cited above, are reasonably calculated to assure scientific reliability of the testing machines, and of the test results. Further, said rules and Statutes are such as to afford defendants reasonable opportunities to challenge a machine's reliability and the reliability of the test results.

This Court finds that the County Court erred in ruling that the current HRS rules violate defendants due process rights in that they do not assure that the chemical breath test instruments results are reliable scientific evidence.

## V.

Even if the records of all malfunctions, repairs and modifications might conceivably provide further assurance of a machine's eliability, such records are not evidence that might be expected to play a significant role in the defendants' defense.

The United State Supreme Court has ruled that the State is not required to preserve evidence that is *potentially* beneficial to a defendant. (emphasis added) In *California v Trombetta,* 467 U.S. 479, 81 L.Ed.2d 47, 104 S.Ct. 2518, the State had failed to preserve breath samples used in the analysis of a defendant's blood alcohol content. The defendants moved to suppress the State's evidence on the ground that the failure to preserve the breath samples precluded their ability to impeach the State's incriminating test results through independent

---

[2] This information was testified to by Dr. Rarick in the proceedings below. See transcript of proceedings taken August 30, 1989, at pages 63 and 64.

analysis of the breath samples. In rejecting this argument the United States constitutional defect in California's policy of not preserving breath samples of suspected drunk drivers in the absence of demonstrated bad faith or departure from routine practice:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v Agurs,* 427 U.S. at 109 and 110, 96 S.Ct. at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means."

The Supreme Court in *Trombetta* pointed out that the Court had never squarely addressed the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants. The Court in addressing the issue at page 487 cited its former ruling in the case of *Killian v United States,* 268 U.S. 231, 7 L.Ed.2d 156, 82 S.Ct. 302 (1961) wherein the Court had discussed the due process constraints on the government's failure to preserve potentially exculpatory evidence. The *Trombetta* Court stated:

In Killian the Court was dealing with a case where Killian had been convicted of giving false testimony. A key element of the government's case was an investigatory report prepared by the F.B.I. The Solicitor General conceded that prior to the trial F.B.I. agents who had prepared the investigatory report destroyed the preliminary notes they had made while interviewing the witnesses. The Petitioner argued that those notes would have been helpful to his defense and that the agents had violated the due process clause by destroying this exculpatory evidence. While not denying that the notes might have contributed to the Petitioner's defense, the Supreme Court ruled that their destruction did not rise to the level of constitutional violation.

As the Petitioner in *Killian* wanted the agents notes in order to impeach their final reports, the defendants here seek the records of malfunctions, repairs and modifications in order to challenge the reliability of the test machine and the incriminating test results produced through the breath test machines.

Although in *Killian* the notes in question were destroyed by the agents, and here there is no evidence that these desired records were every destroyed (whether intentionally or negligently), this Court finds that the principles of the *Killian* case (and the *Trombetta* case) are

**47**

applicable here.[3] Applying those principles to this case, this Court finds that although the (maintenance and) availability of the desired records might conceivably have contributed to defendant's defense, given the fact that the current rules as implemented are reasonably calculated to assure reliability of the test machine and results [as above discussed and determined herein by this Court in paragraph (IV) above], the chances are extremely low that the desired records would have proven to be exculpatory (i.e., calculated to impeach in whole or in part the test machine's reliability or the test results). Correspondingly, the desired records are not evidence which would be of such a nature that they possessed an exculpatory value that would have been apparent at the time the decision was made to not maintain the desired records or at the time the desired records were destroyed. See *Trombetta,* supra, at page 489. Further, it is apparent that defendants had other alternative means of challenging the reliability of the testing machine and accuracy of the test results. See *Trombetta,* supra, at page 490.

The County Court also recited as a basis for its ruling that without the desired records being available to the defendants they have lost a method of effectively challenge a machine's reliability by cross examination. The established law provides that the confrontation provision of the Sixth Amendment of the Constitution of the United States is by its terms restricted to the right to confront and cross examine witnesses and does not encompass physical evidence as well. See *State v T.L.W.,* 457 SO.2d 566 at 567 (Fla. 2d DCA 1984). And see generally *In the interest of G.E.G., a child, Appellant, v State of Florida,* 389 So.2d 325 (Fla. 5th DCA 1980). Applying that principle to the instant case, the defendants rights to confront and cross examine their accusers was not violated.

This Court finds that the County Court erred in ruling that the failure of the HRS rules to require the desired records was a violation of the defendant's due process rights and frustrated the defendant's rights to effectively challenge a machine's reliability by cross examination and use of defense expert witnesses.

For the foregoing reasons, we reverse the lower Court's Order and remand for proceedings not inconsistent with this opinion.

It is so ordered.

---

[3] As previously stated in this opinion, this Court is assuming in addressing this issue that the records are unavailable since if they are available the constitutional issue would be moot. Whether that unavailability be due to their never having been maintained, or due to have been maintained but thereafter destroyed, this Court finds the principles in *Killian* and *Trombetta* applicable here.

BLOUNT, URIEL, JR., J., concurs.