## COMMONWEALTH *vs.* MICHAEL H. WHITE (No. 2).

Suffolk.    April 2, 1974. — May 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Constitutional Law,* Waiver of constitutional rights, Admissions and confessions.  *Identification.  Practice, Criminal,* Sentence.

In a criminal case arising out of a holdup and stabbing of a taxicab driver, identification of the defendant by the victim at a hospital was not to be suppressed on the asserted ground that the identity of the victim was discovered by the police through suppressed statements illegally obtained from the defendant where it appeared that the victim's identity could not have been so discovered by the police. [311]

On the record of a case involving charges for armed assault with intent to murder and armed assault with intent to rob arising out of a holdup and stabbing of a taxicab driver, there was no error in not suppressing evidence that the defendant said that he did not mean to stab the

victim and that the stabbing was an accident due to motion of the taxicab. [311]

Upon convictions for armed assault and armed assault with intent to rob, the defendant could not be sentenced for both where there was only one assault; this court affirmed the judgment for armed assault with intent to rob and reversed the other judgment. [311-312]

Two INDICTMENTS found and returned in the Superior Court on September 15, 1971.

Pre-trial motions were heard by *Moynihan*, J., and the cases were tried before *Connolly*, J.

*Kay Hodge* for the defendant.

*Louis M. Nordlinger*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant appeals under G. L. c. 278, §§ 33A-33G, from convictions on two indictments for aggravated assault on Michael Ryder (No. 58910 for armed assault with intent to murder, resulting in a conviction of armed assault, and No. 58911 for armed assault with intent to rob). He argues two points. The first, relating to the dismissal of juvenile proceedings, has been disposed of adversely to the defendant in another case involving the same defendant. *Commonwealth* v. *White (No. 1), ante,* 301. The second relates to the suppression of testimony by a witness claimed to have been discovered as a direct result of information illegally obtained from the defendant. We hold that suppression of the testimony was not required, but affirm only the conviction for the more serious crime.

The defendant filed a single motion to suppress evidence with respect to nine indictments, including the two involved in this case and, after hearing, the judge filed findings of fact and rulings, which we summarize in so far as they relate to this case. About 5:50 P.M. on Saturday, July 17, 1971, a taxicab driver named Sass was held up by two young black males one of whom was armed with a knife. The police and Sass searched the area, Sass identified the defendant and Joel Taylor as the robbers, and they were arrested. The defendant was aged fifteen years and eleven months, and his parents were separated. The police at-

tempted to reach his mother and father but were unsuccessful. He was given warnings in accordance with *Miranda* v. *Arizona*, 384 U. S. 436, 467-479 (1966), and said he understood. He was advised that he had a right to make a telephone call, but did not do so.

About 7 P.M. the defendant was brought from the police station where he had been booked to police headquarters. The police reached his mother by telephone, but she refused to come to headquarters, and he said he did not wish to talk to her. He was again given *Miranda* warnings and said he understood his rights. He asked whether it would help him to give information about the robberies. The interrogating officer said he would inform the assistant district attorney and the court of the defendant's coöperation. The defendant, during a three-hour period, admitted to participation in twenty-two robberies or attempted robberies of taxicab drivers in Boston. He had been arrested several times during the preceding three years and was not frightened or emotionally upset. There was no doubt that the defendant "waived" his right to remain silent and to the presence of counsel, but there was substantial doubt whether the waiver was "knowing" and "intelligent." Cf. *Commonwealth* v. *Cain*, 361 Mass. 224, 228-229 (1972). The judge therefore ordered suppressed the statements made by the defendant to the police on July 17, 1971, and also a written statement executed by him on Sunday, July 18, 1971, and found to be a product of his incriminating statements of the preceding day.

About 4:30 P.M. on July 18, 1971, the defendant was brought back to police headquarters and viewed for identification purposes by some thirteen taxicab drivers. In separate "show-ups," or person to person confrontations, he was identified as the person who robbed four of the viewing taxicab drivers; the other nine did not so identify him. One of the four identifications, not involved here, was suppressed as unduly suggestive, as were "all statements by the defendant during the entire identification procedure." As to the identifications by the other witnesses, the

motion to suppress was denied: "Their identification of the defendant was not the product of admissions made by the defendant at any time."

The record does not clearly show that the motion and the judge's rulings referred to the indictments involved in this case. We therefore summarize related testimony given on voir dire and before the jury at trial. About 4 P.M. on July 17, 1971, less than two hours before the Sass holdup, the arresting officer, a police officer assigned to investigate taxicab holdups in Boston, saw a taxicab driver named Ryder driving his cab in Roxbury. Some fifteen minutes later, about five minutes' drive away, Ryder picked up two young men as passengers. Later they told him to stop, got out, and attacked him with knives. He drove away; in the process he was stabbed by the taller of the two, and he was taken to the Boston City Hospital in a police car and placed in intensive care. About 6 P.M. or 7 P.M. the next day, Sunday, July 18, 1971, the police brought the defendant and Joel Taylor to Ryder's hospital room, and he identified them as the robbers and the defendant as the one who stabbed him. As the arresting officer was taking the defendant out, the defendant said, "I didn't mean to stab him. It was an accident because the cab moved forward and the knife went in." Ryder also identified the defendant in the court room.

After trial by jury on April 10 and 11, 1973, the defendant was convicted on so much of Indictment No. 58910 as charged assault while armed with a dangerous weapon, and on Indictment No. 58911, charging assault with intent to rob while armed with a dangerous weapon. On April 25, 1973, he was sentenced to an indeterminate term at the Massachusetts Correctional Institution, Concord, on No. 58910. On No. 58911, he was sentenced to not more than seven or less than five years at the Massachusetts Correctional Institution, Walpole, from and after the sentence on No. 58910; this sentence was suspended and the defendant was placed on probation for five years, to begin on release from the sentence to Concord.

We do not believe that this case requires us to canvass "the complex and varied problems that arise when the trial testimony of a witness other than the accused is challenged as 'the evidentiary product of the poisoned tree.' " *Harrison* v. *United States*, 392 U. S. 219, 223, n. 9 (1968). Cf. *Commonwealth* v. *White (No.3), post,* 312. The officer who arrested the defendant for the Sass holdup had seen Ryder a few hours earlier, shortly before the Ryder holdup. The police took Ryder to the hospital after his holdup, and the two holdups were very similar. On this record there is no possibility that Ryder's identity was made known to the police as a result of statements made by the defendant. Cf. *United States* v. *Holsey,* 437 F. 2d 250, 253 (10th Cir. 1970).

No argument is made that the identification of the defendant by Ryder was otherwise defective, and any such contention is therefore waived. Cf. *Commonwealth* v. *Leaster,* 362 Mass. 407, 410-411 (1972), and cases cited. It was suggested in oral argument that the statement that the defendant "didn't mean to stab" Ryder should have been suppressed by virtue of the rulings on the motion to suppress, but the trial judge properly ruled that the statement was spontaneous and not within the scope of the ruling on the motion. Cf. *Commonwealth* v. *Ross,* 361 Mass. 665, 676-679 (1972). In any event, we are convinced that any error in this respect was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U. S. 18, 24 (1967). Indeed, as counsel for the defendant pointed out, the statement was in part exculpatory; it may well have been responsible for the jury's finding that there was no intent to murder.

The defendant was properly found guilty on both indictments. But, although he has not raised the point, he could not be sentenced both for armed assault and for armed assault with intent to rob when there was only one assault. The sentence imposed for the more serious crime is valid. *Kuklis* v. *Commonwealth,* 361 Mass. 302, 308-309 (1972).

The cases are remanded to the Superior Court. The

judgment for armed assault is reversed. Judgment is affirmed as to the indictment for armed assault with intent to rob.

*So ordered.*