COMMONWEALTH *vs.* RALPH C. HAMM.

Essex.    September 17, 1984. — December 5, 1984.

Present: PERRETTA, CUTTER, & DREBEN, JJ.

*Practice, Criminal,* New trial, Findings by judge, Assistance of counsel, Duplicitous convictions. *Mayhem. Constitutional Law,* Assistance of counsel, Cruel and unusual punishment.

The record in a criminal case did not support the defendant's contention that he had been denied effective assistance of counsel based on the defendant's assertions that his attorney was poorly prepared for trial, that the attorney failed to cross-examine certain defense witnesses effectively, and that the attorney did not advise the defendant properly about waiver of a jury trial. [75-79]

Where on appeal of a criminal case only one sentence of defense counsel's closing argument was reproduced in the record, this court declined to consider the defendant's claim that defense counsel was incompetent in his closing argument. [79]

In light of the nature of the crimes of which a defendant had been convicted, defense counsel's suggestion at the time of disposition that the judge consider M.C.I., Bridgewater, as an alternative to a term of imprisonment at M.C.I., Walpole, was not unreasonable. [79]

There was no support in the record of a criminal case for the defendant's claims that defense counsel had improperly communicated with the defendant through members of the defendant's family, and that the defendant was not adequately prepared for trial. [79-80]

At the trial of a criminal case, evidence that after a confederate of the defendant had assaulted the victim with a knife the defendant and another confederate had kicked and "stomped" the victim in the head and face was sufficient to warrant the defendant's conviction of mayhem. [80]

In the circumstances, convictions of assault with intent to murder and mayhem arising from a single assault on one victim were not duplicitous. [80-81]

In a criminal case, the sentences imposed on a defendant convicted of assault with intent to rape, assault with intent to murder, mayhem, and armed robbery were not so disproportionate to the offenses committed as to constitute cruel and unusual punishment. [81]

INDICTMENTS found and returned in the Superior Court on January 9, 1969.

A motion for a new trial, filed on January 9, 1980, was heard by *Francis John Good,* J.

*David C. Casey (Kenneth J. King* with him) for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After a jury-waived trial, the defendant Hamm was convicted on various indictments charging assault with intent to rape, assault with intent to murder, mayhem, and armed robbery. His convictions were affirmed, see *Commonwealth* v. *Hamm,* 357 Mass. 354, cert. denied, 400 U.S. 908 (1970), and some ten years later he filed the instant motion for a new trial, which raised four claims: (1) that he had not received effective assistance of counsel at his trial; (2) that one of his two convictions of mayhem was unsupported by sufficient evidence; (3) that his convictions of assault with intent to murder and mayhem, on the same victim, are duplicitous; and (4) that the sentences imposed on the convictions are so disproportionate to the crimes committed that they constitute cruel and unusual punishment. After an evidentiary hearing on the motion, the trial judge denied it without making any factual findings. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). Hamm appeals the ruling on the motion, and we affirm.

I. *The trial.*

The issues raised by Hamm on his direct appeal (357 Mass. 354) did not require a discussion of the details of the "exceedingly vicious" crimes. *Id.* Such a discussion is here necessary. At Hamm's trial there was evidence to show the following facts. On November 23, 1968, at about 1:00 A.M., Victim A (a male) and Victim B (a female) were seated in the front of A's car (a 1965 Mustang fastback with bucket seats and a manual transmission operated by a shift located in the center of the front floor), which was parked in a wooded area of Lawrence. The doors were unlocked, and the radio was playing. The couple felt the car shake, and the door on the driver's (A's) side suddenly opened. A man's upraised arm and hand,

holding a knife, came down towards A, who brought up his left hand to deflect the knife.

As a struggle ensued between A and his assailant, later identified as Robert Preston, B screamed. A second man, Emanuel Smith, got into the car and hit B, who lost consciousness. A, his face bloodied from knife slashes, continued his struggle with Preston until he was dragged from the car by Smith. Once outside of the car, A was kicked and "stomped" in the head and face until he lost consciousness.

When B regained her senses, she found herself in the back seat of the car being undressed by Hamm. She threw up her hands, attempting to resist, and Hamm repeatedly struck her in the face. B, feigning unconsciousness, heard Preston tell Hamm not to worry because A was dead, and she heard Hamm tell Preston to look for money.

B was dragged from the car. Hamm "stomped" on her face, straddled her hips, looked directly at her, and punched her in the face. B begged Hamm simply to kill her, and he responded to the effect that he intended to do just that. She then felt a tearing sensation and passed out. What appeared to be a tree branch, thirteen inches long by three-quarters of an inch wide, had been forced up her vagina into her abdominal cavity.

Smith placed a burning rag inside the car after wiping away fingerprints, Hamm took money from B's purse, and the three men walked from the wooded area, leaving A and B unconscious on the ground.

A became alert, managed to put out the fire, and dragged B from the area. The two were able to get to a nearby house where they received aid. Smith, Preston, and Hamm were all apprehended within a week.

When the matter was called for trial, Preston's attorney, appointed two weeks earlier, obtained a continuance because he was not prepared to go forward. Smith pleaded guilty, and the Commonwealth was allowed, over Hamm's objections, to proceed against Hamm. The previously recited facts were testified to by the victims and Smith. The Commonwealth also presented medical evidence of the nature and extent of A's and B's respective injuries.

Hamm testified in his own behalf, denying B's and Smith's assertions that he was B's attacker. He admitted to having been at the scene of the crimes but denied participation. He struck A only after A, once outside the car, lunged at him. Hamm stated that Preston had attacked B and that Smith had taken her money. On cross-examination, however, Hamm stated that he might have been in the car with Smith and Preston and that he might have said to look for money. He admitted that when he left the wooded area, he believed that A and B were dead.

After finding Hamm guilty of the various offenses with which he was charged, the trial judge imposed sentences, which were thereafter reduced by the Appellate Division of the Superior Court.[1]

II. *The motion for new trial.*

A. *Ineffective assistance of counsel.*

Hamm's diffuse complaints about the services rendered by his trial attorney relate to two principal claims: (1) that he was ill-prepared for trial; and (2) that he did not advise Hamm properly about waiving his right to a jury trial. Of the four grounds for relief asserted by the motion, the issue of ineffective assistance of counsel is the only question involving disputed facts. Our reading of the transcript of the hearing on the motion shows that the dispute is Hamm's word against that of his trial attorney. Although the trial judge denied the motion without making findings of fact, we see no need to remand the matter. A trial judge's failure to make findings as required by Mass.R. Crim.P. 30(b), 378 Mass. 900 (1979), "is not fatal . . . where the ultimate conclusion is clearly evident from the record. [Citation omitted.] The judge's denial of the defendant's motion implies resolution of factual issues in favor of the Common-

---

[1] As reduced, the sentences are as follows. Terms of life imprisonment, to be served concurrently, were imposed on the conviction of armed robbery of B and assault with intent to rape her. Upon completion of service of those sentences, the following sentences will come into effect, consecutively: fifteen to twenty years for the armed robbery of A; two and one-half to five years for the mayhem on him; two and one-half to five years for the mayhem on B; and six to ten years for the assault with intent to murder her, for a total term of imprisonment of life, to be followed by a term of twenty-six to forty years.

wealth . . . ." *Commonwealth* v. *Lanoue,* 392 Mass. 583, 586 n.2 (1984). Hence, we proceed on the basis that the trial judge accepted the word of trial counsel in those instances where it differed from Hamm's testimony at the hearing. Moreover, we note that those instances are infrequent and that Hamm's true complaint is in areas undisputed but explained by trial counsel.

To prevail on this claim, Hamm must show that the conduct of his trial counsel fell "measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), and that "prejudice result[ed] therefrom," *Commonwealth* v. *Sellon,* 380 Mass. 220, 223 (1980), quoting from *Commonwealth* v. *Rondeau,* 378 Mass. 408, 412 (1979). Further, where, as here, tactical or strategic judgments are called into question, Hamm must also show that his trial attorney's judgment was "manifestly unreasonable," *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978), which generally means the loss of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. at 96. *Commonwealth* v. *Mahan,* 18 Mass. App. Ct. 738, 745 (1984). See also *Strickland* v. *Washington,* 466 U.S. 668, 693-694 (1984). Hamm has failed to make the requisite showings.

(1) *Trial preparation.* Hamm contends that his trial attorney failed to file adequate pretrial discovery motions or conduct an independent investigation of the facts. These failures, the argument continues, account for what Hamm characterizes as abbreviated and ineffective cross-examination of the witnesses.

Trial counsel for Hamm testified at the motion hearing that he had numerous conferences with Hamm and was in communication with Hamm's mother and sister, with whom Hamm communicated and had close relationships (a fact agreed to by Hamm). At one of their initial meetings, counsel was accompanied by his secretary, who recorded a lengthy and somewhat detailed account by Hamm of the events in question. It was decided at the outset, based on Hamm's statement, that the defense would be presence but noninvolvement. This position was consistent with a statement Hamm had given to the po-

lice.[2] Hamm advised his attorney that the crimes had been committed by Preston and Smith, cousins who now intended to blame Hamm.

When counsel appeared for the probable cause hearing, he intended to use the hearing as a discovery device. He was informed, however, that Hamm had been indicted and there was to be no hearing. According to counsel's testimony at the hearing on the motion for a new trial, he filed no formal discovery motions because he had access to the Commonwealth's file, which had been opened to him. From A's statements, counsel anticipated that his testimony would be that he did not see Hamm in the car and that such testimony could be viewed as consistent with Hamm's defense.

A testified at trial as expected, and, seeing no damage to the theory of the defense, counsel's cross-examination was brief. B, as described by trial counsel, was a strong, positive witness in her identification of Hamm as her assailant. Considering her abilities as a witness and the nature of her testimony, counsel wanted a brief cross-examination on the only true issue — Was Hamm her attacker? Counsel brought out that she lapsed in and out of consciousness during the attack and that she had been shown by the police only one photograph of Hamm, and that outdated. In contrast to the cross-examination of A and B, that of Smith was lengthy. Counsel here aimed at bringing out the inconsistencies in his testimony and showing that the testimony was tainted by Smith's bias and prejudice.

Although Hamm argues that had discovery been conducted counsel's cross-examination would have been more detailed and effective, he has not shown what additional information would have surfaced and how it could have been used effectively.[3] We see no indication that trial counsel was unprepared

---

[2] Counsel did not file a motion to suppress the statement Hamm had given to the police because the statement was consistent with the theory of the defense.

[3] The arguments that more could have been done with the photograph identification, with the relationship between Smith and Preston, and with Hamm's height (well over six feet, thereby making it impossible, present counsel argues, for him to fit in the back of the Mustang) are no more than differing opinions among attorneys, a not unusual event.

or incompetent nor do we see that counsel's decisions were so unreasonable that Hamm lost any otherwise available defense.

(2) *Waiver of a jury.* It is important to understand that Hamm does not attack the validity of his waiver of a jury. Compare *Ciummei* v. *Commonwealth,* 378 Mass. 504, 509-510 (1979); *Commonwealth* v. *Schofield,* 391 Mass. 772 (1984). Rather, his argument is that counsel's advice to him that he "waive [a] jury trial without explaining to him the nature of the right waived . . . demonstrate[s] his lack of preparation and inattention to the fundamentals of the defense."

Hamm testified at the motion hearing that his attorney advised him that it was his opinion that Hamm's "chances" were better with a judge than a jury. Hamm acknowledged that his family, who had discussed the issue with counsel, agreed with that assessment and that he (Hamm) had agreed. Hamm stated he agreed even though he had "no idea what a jury was" because he had "put everything in . . . [his attorney's] hands. He was the lawyer." Trial counsel testified that he had informed Hamm at the outset that he should consider waiving a jury, that he had discussed the matter on numerous occasions with Hamm's family, and that he went over his reasoning with Hamm once again just before Hamm signed the waiver forms. Counsel advised Hamm that if he decided to waive a jury, the trial judge would ask him certain questions concerning his understanding of the waiver and whether it was being done voluntarily: "I said to each of those questions I think it is best that you answer no, if that's the way you feel. But you can have a jury trial if you want, if you want to have the jury trial and take the chances. My advice is that we do what I want, but the final decision is yours."

Even assuming that at no time was Hamm advised of the panoply of rights he relinquished by waiving a jury, we will not infer that trial counsel was unprepared and inattentive to the "fundamentals of the defense." As counsel testified, his advice was based upon the facts that Hamm is black and his victims white, that there were photographs of the victims depicting the nature and extent of their injuries, and that the defense was in

essence of a legal and not factual nature (presence alone). Even in the face of Hamm's argument that some of these concerns could have been raised by motion, we think that counsel's advice was reasonable and not the result of incompetency.

(3) *Miscellaneous allegations*. If closing arguments were recorded by the court reporter, they do not appear in the record before us, save trial counsel's introductory statement: "This being a jury-waived trial, the Court has well heard the facts and the evidence, and I am sure the Court has for its part made up its mind." Hamm argues that this "assertion of defeat at the moment when counsel is to marshall the pieces of the factual puzzle into a vivid picture of defendant's innocence is inexcusable." This contention merits no discussion other than to point out that we will not take one statement of an otherwise unreported closing argument and conclude that it is proof of incompetency.

Additionally, the suggestion of trial counsel at the time of disposition that the trial judge consider M.C.I., Bridgewater, as an alternative to a lengthy term of imprisonment at M.C.I., Walpole, was not unreasonable in view of the nature of the crimes.

Equally without force is the contention that trial counsel communicated with Hamm through members of Hamm's family. Counsel knew Hamm's mother through his office's representation of her; he knew that Hamm had good relations with his family; he visited Hamm, who was incarcerated, numerous times and spoke with him at length at several of Hamm's court appearances. The important point is not how many times counsel conferred with Hamm and by what means; it is whether counsel had gleaned and conveyed to Hamm all the information necessary to represent Hamm effectively. We have already expressed our views on that issue.

That trial counsel might not have rehearsed Hamm's testimony with him before he testified, although unwise if true, does not necessarily mean that Hamm was thereby prejudiced. However, trial counsel testified at the motion hearing that he told Hamm from the outset that he might have to testify. When counsel took a lengthy statement from Hamm, prior to the

scheduled probable cause hearing, he went over it with him, playing the role of prosecutor and questioning Hamm about his statements. Moreover, we see nothing in the transcript of Hamm's testimony at trial indicating that those statements made by him on cross-examination which could be viewed as damaging were the result of confusion or misunderstanding attributable to a lack of preparation.

III. *Sufficiency of the evidence of mayhem on A.*

Hamm argues that there was insufficient evidence to show beyond a reasonable doubt that he assaulted A with the intent to maim and disfigure him. A's nose and lip were slit and mutilated in the attack upon him.

The record does not show that Hamm raised this question at trial by a motion under G. L. c. 278, § 11 (the predecessor to Mass.R.Crim.P. 25[a], 378 Mass. 896 [1979]), and he did not raise it on his direct appeal. We take up the claim, however, out of an abundance of caution because we cannot say with certainty that the judge refused to consider the argument as a matter of his discretion. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973).

Viewing the evidence and the reasonable inferences which could be drawn therefrom in the light most favorable to the Commonwealth, we think the evidence sufficient. When Preston approached the car and opened the door, he was holding a knife in his hand, upraised. Smith entered the car from the passenger side. A was pulled from the car, his face slashed, and according to his testimony, "I was fighting with two, and there was a third one standing at the edge of the door." A identified the "two" as Preston and Smith, and the "third" as Hamm. Smith and Hamm then kicked and "stomped" A in the head and face. The situation is similar to that considered, and the inferences which could be drawn, in *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 245-246 n.10, *S.C.,* 379 Mass. 190 (1979).

IV. *Duplicitous charges.*

The convictions claimed by Hamm to be duplicitous stem from two of his four crimes against B: assault with intent to murder and mayhem. Although he raises this question for the

first time before us, we consider it. See *Commonwealth* v. *White* (*No. 2*), 365 Mass. 307, 311 (1974); *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978).

Hamm argues, in essence, that we consider the "realities of the offenses and the circumstances within which they occur," *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 663 (1979), quoting from *Costarelli* .v. *Commonwealth*, 374 Mass. 677, 684 (1978), and that we be mindful of the fact that the "mayhem and assault with intent to murder occurred contemporaneously." The Commonwealth argues that the conviction for assault with intent to murder rests on the evidence that Hamm struck, punched, and "stomped" B repeatedly, whereas the mayhem is based upon her impalement upon the tree branch. The Commonwealth's distinction between the charges and supporting evidence is well made and is reflected in the indictments against Hamm. See G. L. c. 265, §§ 14 and 15. Moreover, each of these offenses requires proof of a fact that the other does not. See Nolan, Criminal Practice §§ 324 and 328 (1976). See generally *Commonwealth* v. *Crocker*, 384 Mass. 353, 357-361 (1981).

V. *Cruel and unusual punishment.*

Hamm argues that his sentences, as reduced (see note 1, *supra*), are so disproportionate to the offenses committed as to constitute cruel and unusual punishment. Application of the tripartite test discussed in *Commonwealth* v. *Jackson*, 369 Mass. 904, 910-916 (1976), and in *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 725-727 (1982), to the present case leads us to conclude that Hamm's term of imprisonment does not "shock[] the conscience and offend[] fundamental notions of human dignity." *Commonwealth* v. *Jackson*, 369 Mass. at 910, quoting from *In re Lynch*, 8 Cal. 3d 410, 424 (1972).

*Order denying motion for new trial affirmed.*