STATE of South Dakota,

v.

Daniel WILCOX.

No. 16162.

Supreme Court of South Dakota.

Argued Jan. 11, 1989.

Decided May 10, 1989.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Michael J. Butler of Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Defendant Daniel G. Wilcox (Wilcox) was charged with second-degree murder, first-degree manslaughter, two counts of first-degree rape, and child abuse in connection with the death of Sheena Johnson (Sheena), aged two and one-half. A motion by Wilcox to sever the rape counts was granted. A separate information was filed charging

Wilcox with being an habitual offender. After a jury trial before the circuit court for Minnehaha County, Wilcox was found guilty of second-degree murder, first-degree manslaughter, and child abuse. The trial court sentenced Wilcox to concurrent terms of life imprisonment for the murder and manslaughter counts, and ten years imprisonment for the child abuse count. State subsequently dismissed both rape charges, as well as the habitual offender information. This appeal followed, with Wilcox alleging four errors by the circuit court:

1. Hearsay testimony of State witness Jolene Hallauer was improperly admitted under SDCL 19-16-35;

2. Evidence that Tina Johnson, mother of victim (Sheena Johnson), may have neglected Sheena before Wilcox became involved with the Johnsons was refused;

3. Evidence was insufficient to support his conviction of first-degree manslaughter; and

4. Evidence was insufficient to support his second-degree murder conviction.

We affirm, treating all four issues seriatim.

## FACTS

At 10 a.m. on Sunday, August 16, 1987, Sheena Johnson, a two and one-half year old girl, was carried, unconscious, into the emergency room at McKennan Hospital. Sheena was in profound shock, with very low blood pressure and nearly nonexistent respiration. Dr. Wayne Wentzbarger, who noticed bruises consistent with battered child syndrome, performed an intubation procedure to assist her breathing. An intravenous feed was established with great difficulty due to collapse of Sheena's circulatory system. Cardiopulmonary resuscitation was performed after Sheena went into ventricular fibrillation. Sheena's head and abdomen were examined by CAT scan, to determine the extent of her internal injuries. Surgery followed, and she was found to have a ruptured duodenum. This rupture had flooded her abdominal cavity with bacteria and blood-tinged fluid, causing septic shock. The doctors soon lost their battle to save Sheena, who was pronounced dead at 10:10 p.m., twelve hours after she had been brought in.

Tina Johnson (Tina), mother of Sheena, told the medical staff that Sheena had fallen down stairs. Wilcox, Tina's live-in boyfriend, also explained the injury as caused by a fall on stairs. In talking to relatives, Wilcox added an additional detail: The fall down the stairs had been caused by his striking the girl, while he was babysitting with her, alone, the night before. This explanation was wholly at odds with the nature of the fatal injury and some of her bruises. Both her bruises and abdominal damage indicated a pattern of abuse, as the bruises were of different ages, and scar tissue showed at least three separate injuries to her duodenum. This repeated duodenal damage was revealed in the autopsy performed by Dr. Brad Randall. According to Dr. Randall, Sheena had been injured over a period of two to three weeks.[1] Dr. Kalda, who operated on Sheena, characterized the "fall" story as "bull shit," and opined that the damage was consistent with a blow of a fist. Dr. Wentzbarger described the cause as a "blunt force trauma." Dr. Hosen, the treating pediatrician, testified that a concentrated force applied directly to the duodenum, as in automobile or motorcycle accidents, was required. Given the nature of Sheena's injuries, and the inadequacy of the explanation given for them, the hospital staff notified the police.

The case assembled by the State for trial included: 1) A statement made by Wilcox, to Paul Johnson (Paul), Sheena's grandfather, to the effect that "if she dies it's my fault" and "I would kill myself," although Paul did not recall his exact words; 2) testimony from Larry Pittenger (Pittenger), a convicted drug dealer with outstanding warrants against him, that he had been

---

1. Although Wilcox argues that Dr. Randall indicated that the fatal blow could have been caused by "playful poking," this was not Dr. Randall's message. Wilcox took a statement out of context, distorting Dr. Randall's words.

present when Wilcox struck a hard blow at Sheena's abdomen in a car during the week before her death; and statements, by Sheena to Jolene Hallauer (Hallauer), a friend of Tina Johnson's, on August 11, 1987, that "my tummy hurts" and "Daddy hit me" (Sheena referred to Wilcox as "Daddy" routinely). Hallauer also testified that Sheena's pain was accompanied by an oval bruise on her abdomen.

## DECISION

### I. HEARSAY TESTIMONY ADMITTED UNDER SDCL 19–16–35

■ Wilcox first argues that the trial court erred in allowing Hallauer to testify regarding Sheena's statements that "my tummy hurts" and "Daddy hit me." He asserts that these hearsay utterances were inadmissible because 1) the defense had not received "formal notice" from State that it would offer the evidence, 2) they were not the most probative State evidence that Wilcox struck Sheena, and 3) the trial court did not adequately determine whether sufficient indicia of reliability existed regarding these statements. We disagree.

SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

It is quite clear that Sheena's statements, offered to a friend in the bathroom while she helped Sheena, are evidence of a material fact. The stomach pain, corroborated by a bruise seen by Hallauer, and the identification of a blow by Wilcox (she referred to Wilcox as "Daddy") as the cause, is unquestionably relevant. This event occurred within the time frame established for infliction of the series of injuries evidenced by scar tissue found at the autopsy (two to three weeks). The first hurdle of SDCL 19–16–35(1) is passed.

The second statutory requirement, as State argues, is also met because the statements are more probative than other evidence State proffered. If Sheena's statements were a perfect match for Pittenger's testimony, which they were not, Wilcox's argument that SDCL 19–16–35(2) required exclusion might have merit. However, Pittenger's statements made no reference to any lasting effect or lingering pain. Sheena's statements, considered in these circumstances, indicates more than a blow. Sheena suffered a lasting injury. This ties Wilcox to her death even more securely than Pittenger's testimony. The force of the blow, and its effects, are demonstrated by Sheena's statements. Pittenger's testimony did prove that Sheena was abused by Wilcox. Hallauer's testimony established an injury which resulted from that abuse. Only Sheena could testify as to the lasting effect and pain of a blow. SDCL 19–16–35(2) is satisfied here.

The notice requirement of SDCL 19–16–35(3) is a problem only if we interpret the statute to require formal written notification—a requirement not in the statute. In this case, the prosecutor informed the trial court that he had orally informed defense counsel that this evidence would be used, an assertion not contradicted by defense counsel. The defense knew of the substance of Sheena's statement from transcripts of the grand jury proceedings. Hallauer was named on the witness list provid-

ed to the defense. This case is readily distinguishable from *State v. Traversie*, 387 N.W.2d 2 (S.D.1986), in which the State indicated that it was willing to proceed without the challenged evidence. The purpose of the notice requirement is to provide the adverse party with a fair opportunity to prepare to meet the testimony. *Traversie, id.* at 6. There is no prejudice to Wilcox's case, as he knew it was forthcoming.

A final challenge to this evidence, that the trial court did not adequately determine whether sufficient indicia of reliability existed regarding Sheena's statements, is unfounded. The trial judge, here, grounded his decision on the specific facts before him. He spread those facts upon the record, outside of the presence of the jury. *State v. Luna*, 378 N.W.2d 229, 238 (S.D. 1985). It is obvious from the trial court's consideration that he was seeking to determine if the declarant was likely to have fabricated a response. The trial judge made reference to lack of prompting, lack of a request for a specific answer,[2] lack of pressure on the declarant, and the setting (a home decorating party) in which the statement was made (in the bathroom), and Sheena's youth. In short, the trial court determined that the declarant, Sheena, did not fabricate the response "Daddy hit me" and Sheena's statement was reliable. We therefore conclude that the trial court did not fail its duty in making adequate findings of reliability before admitting Hallauer's testimony. These findings were not clearly erroneous. *Luna*, 378 N.W.2d at 238.

## II. REFUSAL TO ADMIT EVIDENCE THAT TINA JOHNSON HAD NEGLECTED SHEENA IN 1986

■ Wilcox attempted to present evidence that, in November 1986, Paul, Sheena's grandfather, traveled to Hawaii to retrieve Sheena, whom Tina had abandoned, starting a custody dispute between them. The purpose for this evidence was to show a pattern of neglect by Tina, and point the accusatory finger at her. The trial court rejected this evidence as too remote and irrelevant to the issues in this case. We note that Wilcox was permitted to put on testimony that Sheena exhibited bruises before he associated with her, that Tina had once, apparently in January, spanked the child too hard and was "afraid she was unable to stop." Wilcox was on trial, not Sheena's mother. The jury did hear some evidence that Wilcox proffered, as we have noted. It appears the trial court was treating Wilcox fairly on the presentation of evidence during the trial.

Relevance of evidence is committed to the sound discretion of the trial court, for which this Court will not substitute its own judgment. *See State v. Bartlett*, 411 N.W. 2d 411, 414 (S.D.1987); *State v. Olson*, 408 N.W.2d 748 (S.D.1987); *State v. McNamara*, 325 N.W.2d 288, 291 (S.D.1982). The refused evidence dealt with passive neglect by Sheena's mother, not violent blows to the abdomen. It does not advance Wilcox's position on the issues at trial. The neglect in Hawaii, if proven, does not link Tina to Sheena's ruptured duodenum, nor does it weaken Wilcox's linkage to that injury. Given the dissimilarity between abandonment and violent blows directed at a specific part of the body, we find no abuse of the trial court's discretion. There is no similarity between actions of Tina, in the refused evidence, and the actions of which Wilcox stands accused. Hence, the evidence was irrelevant.

## III. SUFFICIENCY OF EVIDENCE—FIRST–DEGREE MANSLAUGHTER

■ Wilcox next argues that evidence was insufficient to support the conviction of first-degree manslaughter. Wilcox's brief, on this point, consists of approximately one page of double-spaced printed material. Wilcox's reply brief does not argue any law or facts on this issue. Therefore, digesting his one-page legal argument, boils down to the contention that the elements of SDCL 22–16–15(2) were not fulfilled by the facts of this case. He, essentially, argues that the level of barbarity necessary to sustain a conviction for

---

**2.** After Sheena said "my tummy hurts," Hallauer asked her "Why?"

manslaughter in the first degree, simply does not exist. SDCL 22–16–15(2) provides:

> Homicide is manslaughter in the first degree when perpetrated:
>
>   *    *    *    *    *    *
>
> (2) Without a design to effect death, and in a heat of passion, but in a cruel and unusual manner[.]

This Court recently considered the "cruel and unusual" aspect of manslaughter in *State v. Jaques*, 428 N.W.2d 260, 267 (S.D. 1988), also a first-degree manslaughter case:

> Sufficiency of trial evidence rests on whether the evidence, if believed by the jury, is sufficient to find guilt beyond a reasonable doubt. *State v. Andrews*, 393 N.W.2d 76, 80 (S.D.1986) (citing *State v. Faehnrich*, 359 N.W.2d 895 (S.D.1984)). The factual basis supporting a manslaughter charge grounded in a cruel and unusual manner must show that the killing was done with ("some refinement or excess of cruelty sufficiently marked to approach barbarity, and to make it especially shocking....") *State v. Lange*, 82 S.D. 666, 671, 152 N.W.2d 635, 638 (1967) (citation omitted). While death from a single shove in a drunken street brawl is not cruel and unusual, a prolonged beating of a woman by a drunken defendant outweighing her by 100 pounds is sufficient to reach the jury on the point. *Lange, id.*

In *Jaques*, clubbing and kicking a fully grown man who had started a fight, but became helpless, was sufficient for conviction. We judicially note the reference therein to a man beating a woman he outweighed by 100 pounds (in *Lange*). Here, the victim was an innocent two-year-old child. Wilcox was a full-grown man. Sheena's statements, corroborated by bruising and autopsy results, together with an eyewitness account of Wilcox delivering a severe blow to Sheena, link Wilcox to a crime infinitely more brutal than *Lange*. Wilcox's beating upon this little girl was cruel and barbaric. It caused her death. Witness Pittenger, when asked how hard Wilcox struck Sheena, responded by stating "I wouldn't hit my dog that hard." Pittenger had also testified, on other occasions, he witnessed Wilcox strike the child in the stomach. This transcript reveals that the blows were of such force that Sheena was knocked to the ground. We refuse to reverse the conviction of first-degree manslaughter on the basis of insufficient evidence.

## IV. SUFFICIENCY OF EVIDENCE/SECOND–DEGREE MURDER

■ Wilcox's last argument is that evidence was insufficient to support a conviction under SDCL 22–16–9, the South Dakota second-degree murder statute. SDCL 22–16–9 provides:

> Homicide is murder in the second degree when perpetrated without any design to effect death by a person engaged in the commission of any felony other than as provided in § 22–16–4.

Here, the evidence supports killing, without design to effect death, in the commission of felony child abuse (of which Wilcox was also convicted). Wilcox's briefing, on this issue, consists of one very short paragraph and propounds that this Court's decision turns on the admissibility of Hallauer's testimony. The brief states: "If that testimony was erroneously admitted, then the evidence to sustain the conviction is insufficient." This Court has, by this decision, determined that Hallauer's statement was admissible. However, we shall not determine the merit of this issue on the statements of Wilcox's brief. We note that Wilcox does argue, by approximately one and one-half pages, this issue in his reply brief. Wilcox concedes that his contention, on this insufficiency of evidence argument, is very limited in scope. He again reminds us that this issue, according to him, is controlled by this Court's determination of the admission of Hallauer's testimony. He ventures one step further, we note, by stating: "If this Court finds the hearsay statement by Sheena Johnson admissible, Appellant concedes that the evidence then would meet the sufficiency test applied by a reviewing court." Notwithstanding our rul-

ing, and notwithstanding his admission, we nonetheless determine that there is a sufficiency of evidence to sustain the second-degree murder conviction.

Our scope of review on a challenge to a sufficiency of evidence, was again recently set forth in *State v. Bartlett,* 411 N.W.2d 411, 412 (S.D.1987), wherein we expressed:

> In determining the sufficiency of the evidence on appeal in a criminal case the issue before this court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. "[I]n making such a determination this Court will accept that evidence and the most reasonable inferences that can be fairly drawn therefrom, which will support the verdict.".... (citations omitted)

We do not resolve any conflicts of evidence or determine the credibility of witnesses. *State v. Battest,* 295 N.W.2d 739 (S.D. 1980). Questions of credibility and weight of the evidence are for the jury. *State v. Blakey,* 332 N.W.2d 729 (S.D.1983).

Wilcox maintained, at the hospital, that the child had fallen down a flight of stairs. Testimony from lay witnesses and medical experts belie this statement. Accidental injury, such as Wilcox advanced, was disbelieved by the jury. It is obvious that the injuries, which this child sustained, were inconsistent with a fall down a flight of stairs. This case falls squarely within those cases involving the battered child syndrome, a disgrace to civilized society. Rarely are there witnesses to the battered child syndrome episodes and factual scenarios. These attacks are so cowardly that they are hidden from parents and associates of children. Here, however, we find one witness who actually saw these brutal blows struck upon this child's little body. We have, then, direct evidence, as distinguished from circumstantial evidence, in the case under consideration. We hold that there was ample testimony in the record sufficient to support a conclusion that Wilcox delivered a fatal blow which caused Sheena Johnson's death. Medical testimony stands uncontradicted that the cause of death was the rupture of the duodenum with resulting peritonitis and septic shock. At least three separate injuries, per the medical experts, were inflicted to the duodenum. Doctors Randall and Ophoven both gave their medical opinion that the fatal injury occurred as a result of a severe blow to the abdomen. Obviously, the jury sustained its finding of guilt, beyond a reasonable doubt, based upon all of the testimony submitted to them. We refuse to tamper with this finding of guilt. Accordingly, we reject argument IV of Wilcox's and affirm his conviction of second-degree murder.

Affirmed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur except that, based on part 2 of my dissent in *State v. Rough Surface,* 440 N.W.2d 746, 760 (S.D.1989) (Sabers, J., dissenting), I would hold that it was plain error to sentence Wilcox to concurrent life sentences on second-degree felony murder and first-degree manslaughter as there was only one death. *See also State v. Baker,* 440 N.W.2d 284 (S.D.1989).

This case differs from *Rough Surface* in that the homicide convictions here are for murder and manslaughter, rather than all murder convictions. However, other courts have held that double homicide convictions for a single death are improper, regardless of the types of homicide. *Houser v. State,* 474 So.2d 1193 (Fla.1985); *Commonwealth v. Jones,* 382 Mass. 387, 416 N.E.2d 502 (1981); *Loscomb v. State,* 45 Md.App. 598, 416 A.2d 1276 (1980), *aff'd on other grounds* 291 Md. 424, 435 A.2d 764 (1981); *Commonwealth v. Monteil,* 273 Pa.Super. 94, 416 A.2d 1105 (1979). As stated in *Houser,* "Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes." *Id.* at 1197. Similarly, there is no expressed intent on

the part of our legislature to punish a single death under both SDCL 22–16–9 (murder in the second degree) and SDCL 22–16–15 (manslaughter in the first degree).

I would reverse and remand to the trial court to vacate one of the homicide convictions and for appropriate resentencing.