**Daniel WILCOX, Petitioner
and Appellant,**

v.

**Walter LEAPLEY, Warden of the South
Dakota State Penitentiary, Appellee.**

**No. 17603.**

Supreme Court of South Dakota.

Argued March 16, 1992.

Decided June 24, 1992.

Rita Haverly Allen of Hagen, Wilka, Schreier & Archer, P.C., Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for appellee.

MILLER, Chief Justice.

This is an appeal from the circuit court's order quashing Daniel Wilcox' writ of habe-

as corpus petition. We remand for resentencing.

## FACTS

Wilcox was convicted of second-degree murder, first-degree manslaughter, and child abuse arising out of the death of 2½ year old Sheena Johnson. Sheena died from septic shock as a result of a ruptured duodenum, an organ which connects the stomach to the bowels. This court affirmed those convictions on direct appeal. *See State v. Wilcox,* 441 N.W.2d 209 (S.D. 1989) (*Wilcox I*).

Thereafter, Wilcox filed this habeas corpus action, claiming his right against double jeopardy was violated, and that he received ineffective assistance of counsel at trial and on direct appeal. During the hearing on Wilcox' writ of habeas corpus, he was allowed to orally amend his application to include violations of his Sixth and Fourteenth Amendment rights because the trial judge did not ascertain whether he waived his right to testify at his trial.

This is an appeal from the circuit court's order quashing the writ of habeas corpus.

## DECISION

### I.

WHETHER WILCOX WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSELS' FAILURE TO RAISE THE DOUBLE JEOPARDY ISSUE BEFORE THE SENTENCING COURT AND ON DIRECT APPEAL TO THIS COURT.

After Wilcox was convicted of second-degree murder (SDCL 22–16–9) and manslaughter in the first degree (SDCL 22–16–15(2)), the trial court sentenced him to concurrent terms of life imprisonment. Wilcox was additionally sentenced to ten years for the child abuse conviction. Wilcox argues that his concurrent life sentences for one homicide violated the double jeopardy clause.

Wilcox claims that his attorneys were ineffective because they failed to raise the

double jeopardy issues before the sentencing court and on appeal to this court.

## A. *Double Jeopardy*

"The United States Supreme Court has held that the constitutional prohibition against double jeopardy consists of three separate guarantees. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, [664–65] (1969). The third guarantee 'protects against multiple punishments for the same offense.'"

*State v. Baker,* 440 N.W.2d 284, 293 (S.D. 1989) (quoting *State v. Adams,* 418 N.W.2d 618, 625 (S.D.1988)). *See also Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

The United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), established the rule "for determining whether two separate statutory offenses providing separate punishment are actually the 'same offense.'" *Adams,* 418 N.W.2d at 625. "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied ... is whether each provision requires proof of an additional fact which the other does not.'" *Id.* (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309).

The United States Supreme Court further explained the *Blockburger* test in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980): "'Thus we stated that if "each *statute* requires proof of an additional fact which the other does not," [citation omitted],' the offenses are not the same under the *Blockburger* test. [Citations omitted.] (emphasis in original)." *Adams,* 418 N.W.2d at 625 (quoting *Vitale,* 447 U.S. at 416, 100 S.Ct. at 2265, 65 L.Ed.2d at 235).

Recently, the United States Supreme Court stated:

[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended [citations omitted] ... The *Blockburger* test is simply a 'rule of statutory construction,' a guide to determine whether the legislature intended multiple punishments.

*Grady,* 495 U.S. at 516–17, 110 S.Ct. at 2091, 109 L.Ed.2d at 561.

Therefore, we must examine the statutes which Wilcox violated. SDCL 22–16–9 provides:

Homicide is murder in the second degree when perpetrated without any design to effect death by a person engaged in the commission of any felony other than as provided in § 22–16–4.

SDCL 22–16–15(2) provides:

Homicide is manslaughter in the first degree when perpetrated:

. . . .

(2) Without a design to effect death, and in a heat of passion, but in a cruel and unusual manner[.]

The same facts and actions committed by Wilcox were used to convict him of both statutory offenses. Under SDCL 22–16–9 Wilcox had to commit a felony which resulted in death. Wilcox committed felony child abuse. SDCL 26–10–1 provides: "Any person who abuses, exposes, tortures, torments or cruelly punishes a minor in a manner which does not constitute aggravated assault, is guilty of a Class 4 felony." SDCL 22–16–15(2) provides that homicide must have been committed in a cruel and unusual manner. In *Wilcox I,* we stated: "Wilcox's beating upon this little girl was cruel and barbaric. It caused her death." 441 N.W.2d at 213.

It is also interesting to note that SDCL 22–16–1 defines homicide in the *disjunctive.*

Homicide is the killing of one human being by another. It is *either:*

(1) Murder;

(2) Manslaughter;

(3) Excusable homicide;

(4) Justifiable homicide; *or*

(5) Vehicular homicide. (Emphasis added.)

We have stated:

"The rule seems to be well settled that, when a penal statute mentions several acts disjunctively, and prescribes that

each shall constitute the *same offense* and is subject to the same punishment, an information may charge any and all such acts conjunctively as constituting a single offense." (Emphasis in original.) *Baker,* 440 N.W.2d at 293 (quoting *State v. Likness,* 386 N.W.2d 42, 43 (S.D.1986)). Furthermore, there is no expressed legislative intent to punish a single death under both SDCL 22–16–9 (second-degree murder) and SDCL 22–16–15 (first-degree manslaughter).

In this case, Wilcox was convicted of both murder and manslaughter for the death of Sheena Johnson. At this time, we hold that double homicide convictions for a single death are improper. In the future, we urge prosecutors to charge defendants in cases such as this in alternative counts.

We conclude, however, that it is not necessary to reverse Wilcox' *convictions.* As we stated in *Wilcox I,* they were supported by law and fact. Rather, we must reverse Wilcox' *sentence.*

We remand to the trial court with the direction that it vacate the sentence on the lesser offense of first-degree manslaughter and enter judgment on the greater offense of second-degree murder. *People v. Zeitler,* 183 Mich.App. 68, 454 N.W.2d 192 (1990); *Com. v. Jones,* 382 Mass. 387, 416 N.E.2d 502 (1981); *Com. v. Grasso,* 10 Mass.App. 915, 411 N.E.2d 191 (1978); *Kuklis v. Commonwealth,* 361 Mass. 302, 280 N.E.2d 155 (1972); *Commonwealth v. White (No. 2),* 365 Mass. 307, 311 N.E.2d 547 (1974); *People v. Carl Johnson,* 99 Mich.App. 547, 297 N.W.2d 713 (1980); *People v. Densmore,* 87 Mich.App. 434, 274 N.W.2d 811 (1978).

### B. *Ineffective Counsel*

■ Wilcox argues that he was denied his right to effective counsel because his attorneys did not raise the double jeopardy issue at the sentencing hearing or on direct appeal to this court, nor did they file a petition for rehearing.

"[T]o succeed on an ineffective assistance of counsel claim, the defendant must show two requirements.

'First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' "

*Miller v. Leapley,* 472 N.W.2d 517, 518 (S.D.1991) (quoting *Luna v. Solem,* 411 N.W.2d 656, 658 (S.D.1987)) (quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

We have also stated that:

"Because of the difficulty inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "

*Miller,* 472 N.W.2d at 518 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95).

■ We have concluded that Wilcox should be resentenced; however, we are not convinced that he was denied effective assistance of counsel. During the hearing on the writ of habeas corpus, one of Wilcox' trial attorneys testified as follows:

Q: [By Ms. Haverly (habeas counsel)] Okay. And that was not raised—the double jeopardy issue was not raised either with regard to the felony, murder or underlying felony or with manslaughter and the murder two?

A: [By Mr. Larson] Right. It wasn't—it was overlooked as an issue at the time of sentencing. It was considered and rejected, I believe at the time of the appeal.

Q: Do you recall why you rejected it at the time of appeal?

A: I do. The feeling was at that time was the best that was going to happen is Dan was going to come out with one life sentence instead of two. And we

didn't want to let the Supreme Court, when we thought there was a legitimate—some legitimate matters to consider a retrial on the entire matter, to feel that they were, I don't know, giving us a half a loaf by saying, you know, okay, he's only got one life sentence, because that wouldn't really accomplish much for Dan.

Q: Unless maybe cut by the board or whoever would cut the life sentence?

A: In the—looking back now that we know we lost on the other issues, yes. But if I had to make that decision again, I would make that same decision because the chances of somebody getting something cut before the board relative to the chances of somebody getting a murder conviction reversed, I would rather take the chance on getting the whole thing reversed.

It is important to note that this court has never before held that double homicide convictions for a single death are improper. We have recognized that our aggravated assault statute (SDCL 22–18–1.1) "does not contain four separate offenses, but rather describes one violation that may be established in four different ways." *Baker*, 440 N.W.2d at 293. Likewise, SDCL 22–16–1 describes homicide as a violation that may be established in five different ways.

In *Wilcox I*, Justice Sabers dissented, raising the sentencing issue sua sponte. In his dissent, he cited to other jurisdictions which hold that "double homicide convictions for a single death are improper, regardless of the types of homicide." 441 N.W.2d 209, 214 (S.D.1989); *Houser v. State*, 474 So.2d 1193 (Fla.1985); *Loscomb v. State*, 45 Md.App. 598, 416 A.2d 1276 (1980); *Com. v. Jones, supra; Commonwealth v. Monteil*, 273 Pa.Super. 94, 416 A.2d 1105 (1979). *See also Zeitler, supra.*

However, to find that Wilcox' attorneys were ineffective because they failed to raise this issue would impose upon them a higher standard then "the wide range of reasonable professional assistance." *Miller*, 472 N.W.2d at 518.

Wilcox was sentenced on February 5, 1988; *State v. Baker* was handed down

May 10, 1989. Counsel clearly did not have the benefit of our holding in *Baker* to assist them at the time of sentencing. Furthermore, it is apparent that counsel thought there were valid, strategic reasons for not raising the issue on appeal. An attorney's performance must not be judged using the benefit of hindsight. *Strickland*, 466 U.S. at 682, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Moreover, "our function is not to second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney." *Woods v. Solem*, 405 N.W.2d 59, 62 (S.D.1987).

It is our opinion, after reviewing the record in this habeas corpus proceeding and *Wilcox I*, that Wilcox was not denied his right to effective assistance of counsel.

## II.

WHETHER WILCOX' SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED BECAUSE THE RECORD DOES NOT ESTABLISH A WAIVER OF HIS RIGHT TO TESTIFY.

■ The United States Constitution does not expressly state that the accused in a criminal trial has the right to take the stand to testify in his defense. However, the United States Supreme Court has recognized this right which is based on the Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Court has also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding his case, such as whether or not to testify. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ The key question presented, however, is whether the trial court is required to obtain an on-the-record waiver of that right. Wilcox urges this court to adopt a rule which requires the trial court to inquire on the record whether the defendant has voluntarily and knowingly relinquished his right to testify.

The United States Supreme Court has not yet addressed this question. However, the federal courts of appeal addressing the issue have held that there is no affirmative duty to address a silent defendant and inquire whether he knowingly and intelligently waives the right to testify. *United States v. McMeans,* 927 F.2d 162 (4th Cir. 1991); *United States v. Martinez,* 883 F.2d 750 (9th Cir.1989); *Ortega v. O'Leary,* 843 F.2d 258 (7th Cir.1988); *Siciliano v. Vose,* 834 F.2d 29 (1st Cir.1987); *United States v. Bernloehr,* 833 F.2d 749 (8th Cir.1987); *United States v. Janoe,* 720 F.2d 1156 (10th Cir.1983).

Additionally, the majority of states that have considered this question have held that courts have no duty to advise the defendant of his right to testify and establish on the record that this right was waived knowingly and intelligently. *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985); *Torres–Arboledo v. State,* 524 So.2d 403 (Fla.1988); *Aragon v. State,* 114 Idaho 758, 760 P.2d 1174 (1988); *State v. McKinney,* 221 Kan. 691, 561 P.2d 432 (1977); *Com. v. Waters,* 399 Mass. 708, 506 N.E.2d 859 (1987); *People v. Simmons,* 140 Mich.App. 681, 364 N.W.2d 783 (1985); *State v. El-Tabech,* 234 Neb. 831, 453 N.W.2d 91 (1990); *In re Mecier,* 143 Vt. 23, 460 A.2d 472 (1983); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487 (1980).

As the Wisconsin Supreme Court stated in *Albright,* a formal waiver requirement might "provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy." 291 N.W.2d at 493.

 Furthermore, Wilcox' conduct provides a sufficient basis for this court to infer that he in fact waived his right to testify. A review of the record reveals that Wilcox knew that it was his decision whether to take the stand and testify. He stated at the habeas hearing: "I knew it was my decision." He also testified at that hearing that one of his attorneys informed him of the advantages and disadvantages of testifying and he at no time asked the judge to appoint another attorney to repre-

sent him. Additionally, when the trial judge asked counsel whether Wilcox was going to testify, Wilcox remained silent when his attorney said "no." "The defendant may not … indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" *Bernloehr,* 833 F.2d at 752.

### III.

### WHETHER WILCOX WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL ADVISED HIM NOT TO TESTIFY AT TRIAL.

 Wilcox contends that his counsel failed to represent him effectively in advising him not to testify on his own behalf. Wilcox claims that he would have testified that he saw Larry Pittenger strike Sheena within the week before she died.

Wilcox' attorneys admit that they advised Wilcox not to take the stand. This advice was based on Wilcox' performance at a mock cross-examination which was held prior to trial. The mock cross-examination was conducted by a defense team consisting of two experienced defense attorneys, an additional member of the public defender's office, a private investigator, and a legal intern.

This defense team unanimously agreed that Wilcox would not hold up under cross-examination and that it was best for him not to take the stand. Additionally, his attorneys were concerned that Wilcox' prior criminal record would be exposed during the cross-examination and would prejudice the jury.

We have already concluded that Wilcox was aware that the decision to testify was ultimately his. Wilcox willingly and knowingly followed his attorneys' advice. There is no merit to his contention that his counsel coerced him into waiving his right to testify. As we stated earlier, it is not the function of this court to second-guess the tactical decisions of trial counsel. *Woods,* 405 N.W.2d at 62.

Wilcox has the additional burden of showing that his attorneys' deficient per-

formance prejudiced his defense. *Anderson v. State,* 373 N.W.2d 438 (S.D. 1985); *High Elk v. State,* 344 N.W.2d 497 (S.D.1984). Prejudice exists where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987).

In light of all of the testimony, Wilcox fails to show with reasonable probability that his testimony would have changed the result in the proceedings. For these reasons, we reject Wilcox' argument that he was denied effective assistance of counsel.

Remanded for resentencing for reasons noted earlier.

WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

SABERS, J., concurs in part and dissents in part.

HENDERSON, Justice (specially concurring).

Wilcox's lawyers failed to (1) urge double jeopardy at the trial court level (2) assert double jeopardy in the appeal to the Supreme Court of this state (3) advocate, by way of a petition for rehearing, that the double homicide convictions should be set aside. This, notwithstanding a sua sponte dissent of Justice Sabers.

Wilcox, through new counsel, now uses the writ of habeas corpus to assert a defense that was never urged before this Court. We approve of this collateral attack by our decision today. If there was ever a "back door approach" in defending a case, we have an epitome of such an approach, before us. For contrary holdings and authority (where defendant failed to urge constitutional arguments) *see, State v. Janssen,* 371 N.W.2d 353, 356 (S.D.1985) and *United States v. Herzog,* 644 F.2d 713, 716 (8th Cir.1981). This includes double jeopardy, *see,* 1 C.Wright, Federal Practice and Procedure; Criminal, § 193 at 706–06 (2d ed. 1982).

I concur that this Court should continue to hold that both convictions were supported by the evidence; in point of fact, that precise issue, on both convictions, was treated fairly and fully in *Wilcox I.* I likewise concur for a resentencing on the murder conviction, continuing to believe that Wilcox perpetrated a heinous murder upon a defenseless girl. He literally beat her to death. Wilcox knowingly waived his right to take the stand. *United States v. Bernloehr,* 833 F.2d 749, 752 (8th Cir.1987). Constitutional rights can be waived. *Herzog, supra.* Here, he suffered no prejudice whatsoever because the testimony evidence was overwhelming that his acts of savagery caused the death of this little girl. There is no reasonable probability that the result of the proceedings would have been different had Wilcox taken the stand. Here, victim identified Wilcox as her assailant. It is preposterous for this man to now claim that his lawyer's advise caused him to be convicted. He wants to invalidate his trial because he did not take the stand. Is not Sheena Johnson entitled to justice? The law should work for her, not just as Wilcox would have us.

Lastly, I support the remand for sentencing based upon our writing and the authorities contained therein per *State v. Shilvock–Havird,* 472 N.W.2d 773 (S.D.1991).

SABERS, Justice (concurring in part and dissenting in part).

I stand on my writing in *Wilcox I* as follows:

I concur except that, based on part 2 of my dissent in *State v. Rough Surface,* 440 N.W.2d 746, 760 (S.D.1989) (Sabers, J., dissenting), I would hold that it was plain error to sentence Wilcox to concurrent life sentences on second-degree felony murder and first-degree manslaughter as there was only one death. *See also State v. Baker,* 440 N.W.2d 284 (S.D.1989).

This case differs from *Rough Surface* in that the homicide convictions here are for murder and manslaughter, rather than all murder convictions. However, other courts have held that double homicide convictions for a single death are improper, regardless of the types of homicide. *Houser v. State,* 474 So.2d

1193 (Fla.1985); *Commonwealth v. Jones*, 382 Mass. 387, 416 N.E.2d 502 (1981); *Loscomb v. State*, 45 Md.App. 598, 416 A.2d 1276 (1980), *aff'd. on other grounds* 291 Md. 424, 435 A.2d 764 (1981); *Commonwealth v. Monteil*, 273 Pa.Super, 94, 416 A.2d 1105 (1979). As stated in *Houser*, "Florida courts have repeatedly recognized that the legislature did not intend to punish a single homicide under two different statutes." *Id.* at 1197. Similarly, there is no expressed intent on the part of our legislature to punish a single death under both SDCL 22–16–9 (murder in the second degree) and SDCL 22–16–15 (manslaughter in the first degree).

I would reverse and remand to the trial court to vacate one of the homicide convictions and for appropriate resentencing.

The majority opinion is riddled with apparent inconsistencies:

First, it notes that "SDCL 22–16–1 defines homicide in the *disjunctive*."

Second, it notes that "Homicide is ... *either:*

(1) Murder; [or]

(2) Manslaughter;" (emphasis in majority opinion).

Third, it points out "there is no expressed legislative intent to punish a single death under both [murder] and [manslaughter]."

Fourth, it holds that "double homicide convictions for a single death are improper."

Fifth, it urges "prosecutors [in the future] to charge defendants in cases such as this in alternative counts," and,

Sixth, it concludes it is not necessary to reverse Wilcox' conviction, only his sentence on the lesser offense of first-degree manslaughter.

I may need more lessons in logic but words like "disjunctive," "either," and "alternative" imply one or the other but *not* both. We should affirm the murder conviction and sentence, and reverse the manslaugh-ter conviction because there was only one death.